SALTER, J.
In these consolidated appeals,[1] we are asked to review the legal sufficiency of *657 claims that a condominium developer (ap-pellee North Carillon, LLC) and its escrow agent (appellee First American Title Insurance Company) violated the requirements of section 718.202, Florida Statutes (2006),[2] regarding pre-closing deposits by the buyer/appellees. The stakes are significant for the parties and for others — one consequence of the current real estate recession in South Florida is that many prospective condominium buyers are attempting to void the purchase contracts they signed in what hindsight now discloses was an irrationally exuberant real estate market.
In the cases at hand, the purchase price for each unit was in excess of $1,000,000, and the deposit for each unit exceeded $176,000. If, as alleged in the second amended complaint, the developer failed to comply with the pertinent requirements of section 718.202, the purchase contract is voidable[3] and the buyer is entitled to reclaim the deposit. If the developer did comply and, as here, each buyer refused to close pursuant to the purchase contract, substantially all of the deposits are to be forfeited to the developer.[4] In addition, the prevailing party is entitled to recover its reasonable attorney’s fees and costs under the terms of the purchase contracts.
We conclude that a well-reasoned federal decision in 2009 on this issue is disposi-tive, notwithstanding a 2010 statutory amendment intended to “clarify” the escrow requirements. Based on that analysis, we reverse the final judgments below with respect to the buyers’ claims against the developer under section 718.202. We affirm the final judgments relating to the buyers’ purported claims against the escrow agent.
I. The Statutory Escrow Requirements Before July 1, 2010
The buyers are single-asset, Nevada limited liability companies formed to buy and hold the condominium units in “North Carillon Beach,” a luxury condominium development on Collins Avenue in Miami Beach. The contracts for Units N-603 and N-1103 were signed by the buyers and developer in May 2006.
In May 2006, section 718.202(1) required, in pertinent part:
If a developer contracts to sell a condominium parcel and the construction, furnishing, and landscaping of the property submitted or proposed to be submitted to condominium ownership has not been substantially completed in accordance with the plans and specifications and representations made by the developer in the disclosures required by this chapter, the developer shall pay into an escrow account all payments up to 10 percent of the sale price received by the developer from the buyer towards the sale price. [Emphasis supplied].
In May 2006, section 718.202(2) required, in pertinent part:
All payments which are in excess of the 10 percent of the sale price described in subsection (1) and which have been received prior to completion of construction by the developer from the buyer on a contract for purchase of a condominium parcel shall be held in a special *658 escrow account established as provided in subsection (1) and controlled by an escrow agent and may not be used by the developer prior to closing the transaction, except as provided in subsection (3) or except for refund to the buyer. [Emphasis supplied].
Subsection (3) of section 718.202 allows a developer to withdraw “escrow funds in excess of 10 percent of the purchase price,” if allowed by the purchase contract, “from the special account” required by subsection (2), when construction has begun and provided those excess funds are used “in the actual construction and development of the condominium property.”[5]
The question of law presented here— whether a developer may use a single escrow account (versus two separate accounts) for “10 percent” buyer deposits under section 718.202(1) and “in excess of the ten percent” buyer deposits under section 718.202(2) — was directly addressed and decided by the United States District Court for the Southern District of Florida in 2009 in Double AA International Investment Group, Inc. v. Swire Pacific Holdings, Inc., 674 F.Supp.2d 1344 (S.D.Fla.2009), aff'd in part, vacated in part, 637 F.3d 1169 (11th Cir.2011). The court held, after extensive analysis:
Considering the plain language of the statute, giving meaning to each word as written, and avoiding an interpretation that would render portions of the statute surplusage, the only reasonable conclusion is that the statute requires a developer to establish two separate escrow accounts if a buyer deposits more than 10 percent of the purchase price. Given that requirement, and given the express language of section 718.202(5), [the developer’s] failure to establish two separate escrow accounts for the [buyers’] deposit violated the statute, and rendered the Purchase and Sale Agreement voidable by the [buyers].
Double AA, 674 F.Supp.2d at 1350.
In December 2009, only days after Double AA was issued, the buyers in the present cases amended their circuit court complaints to add a count[6] to void the purchase contracts for failing to utilize two separate escrow accounts for the “10 percent” and “in excess of the 10 percent” components of the buyers’ deposits. If Double AA was a correct statement of the law regarding the “special” and separate, second escrow account requirement at the time it was issued — and we conclude that it was correct — then the buyers’ allegations in this case are legally sufficient to state a violation of the statutory requirement and thus void the purchase contracts.
II. The 2010 Amendment and “Clarification”
During the first legislative session after the Double AA decision was issued, the legislature enacted an amendment to section 718.202. The amendment, part of a comprehensive set of revisions to Florida’s condominium laws effective July 1, 2010, added a new section 718.202(11):
(11) All funds deposited into escrow pursuant to subsection (1) or sub *659 section (2) may be held in one or more escrow accounts by the escrow agent. If only one escrow account is used, the escrow agent must maintain separate accounting records for each purchaser and for amounts separately covered under subsections (1) and (2) and, if applicable, released by the developer pursuant to subsection (3). Separate accounting by the escrow agent of the escrow funds constitutes compliance with this section even if the funds are held by the escrow agent in a single escrow account. It is the intent of this subsection to clarify existing law.
[Emphasis added].
The developer argues that the amendment only clarifies section 718.202, that its effect is therefore retroactive, and that the amendment applies to the cases at hand. The developer also argues that the amendment is procedural and remedial in nature, such that it applies to contracts and causes of action in existence upon the effective date. If the 2010 amendment applies to May 2006 contracts and a December 2009 cause of action, then the single escrow account for the “10 percent” and “in excess of the 10 percent” deposits complies with section 718.202, and the developer and escrow agent need only prove that they kept “separate accounting records” for each purchaser and the amounts deposited under section 718.202(1) and the amounts deposited or withdrawn under section 718.202(2) and (3).[7]
The buyers argue that the 2010 amendment does not “clarify” a set of escrow requirements that were enacted over twenty years before the “clarification,” and that the amendment impermissibly impairs their vested contract rights and abrogates their 2009 cause of action for a declaration that the purchase contracts are void.
These contentions require us to determine (a) whether the 2010 amendment alters the analysis set forth in Double AA or the application of that analysis to the 2006 contracts and 2009 causes of action by the buyers, and (b) whether the buyers alleged a legally sufficient cause of action against the second defendant and appellee, First American Title Insurance Company.
III. Analysis — Developer
The appellees are correct that we are not bound by the decision of a federal court applying Florida law. Bystrom v. Mut. of Omaha Ins., 566 So.2d 351, 352 (Fla. 3d DCA 1990); Liberty Am. Ins. Co. v. Kennedy, 890 So.2d 539, 541 (Fla. 2d DCA 2005). Our esteemed federal colleagues are quick to acknowledge that “when federal courts interpret a state law, they are merely guessing at how the Florida state courts would interpret it and are often wrong.” Chalfonte Condo. Apartment Ass’n, Inc. v. QBE Ins. Corp., 526 F.Supp.2d 1251, 1254 (S.D.Fla.2007) (Middlebrooks, J.)(noting United States Court of Appeals Judge Carnes’ observation that “when we write to a state law issue, we write in faint and disappearing ink”) (Sultenfuss v. Snow, 35 F.3d 1494, 1504 (11th Cir.1994)).
The other side of that coin is applicable here, however; when a federal court, particularly one in Florida, has had the first opportunity to address a state law question and has ruled on it in a well-reasoned, persuasive opinion, we may cite and adopt that decision as our own. And *660 so it is in this case; Double AA[8] applied well-settled principles of statutory construction to support its holding that “special account” and “special escrow account” are terms mandating separate accounts for deposits under section 718.202(1) and (2). That case did not hold, nor do we, that a developer must establish a separate bank or other depository account for each buyer’s “10 percent” deposit relating to a pre-completion condominium property, or for each buyer’s “in excess of the 10 percent” deposit. Rather, the issue is the mandatory separateness of the escrow accounts for the two types of deposits made under subsections (1) and (2) of the statute.
Turning to the 2010 amendment to section 718.202 adopted after Double AA, we are persuaded that the enactment is more than mere “clarification,” and that it cannot be given retroactive application to the contracts and causes of action before us. As to “clarification,” we have repeatedly held that gaps of a decade or two between the enactment of a state statute and a “clarifying” amendment may preclude retroactive effect, as the memberships of the earlier and later legislatures are so different. Ramcharitar v. Derosins, 35 So.3d 94, 99 (Fla. 3d DCA 2010). In the cases at hand, the original statute and the amendment are separated by over twenty-five years.
As to whether the amendment affects substantive rights (or is instead merely procedural or remedial in nature), the 2006 contracts included, as a matter of law, those statutory provisions affecting the rights of the parties and applicable to the terms of their agreements. See, e.g., Brickell Bay Club v. Ussery, 417 So.2d 692, 694 (Fla. 3d DCA 1982) (“All statutes in effect upon the date of execution of a contract are a part of the contract.”). The buyers thus obtained, in 2006, enforceable rights to specific provisions regarding their deposits and regarding the voidability of their contracts in the event of non-compliance by the developer. Similarly, when the buyers added a claim in late 2009 based on section 718.202 (before the 2010 amendment and after the holding in Double AA), they had a legally sufficient, fully-accrued cause of action to void the purchase contracts and obtain a refund of their deposits.
Assessing the amendment and this record under Menendez v. Progressive Express Insurance Co., 35 So.3d 873, 877 (Fla.2010), and State Farm Mutual Automobile Insurance Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995), we conclude that (1) the Legislature expressed an intention that the 2010 amendment be applied retroactively, but (2) retroactive application must be rejected as it impairs a vested contractual right. Article I, section 10, of the Florida Constitution prohibits retroactive application under such a circumstance.
The developer has also urged us to give deference to an “informal legal opinion” provided by an assistant general counsel of the Florida Department of Business & Professional Regulation in 1999 to the Chief of the Bureau of Condominiums within Florida’s Division of Condominiums, Timeshares, and Mobile Homes. That opinion concluded that the two types of deposits under section 718.202(1) and (2) need not be placed in separate depository escrow accounts if they are “accounted for separately.” This contention was thor *661 oughly considered and rejected, however, by the federal court in the Double AA case in the 2010 findings of fact and conclusions of law, 2010 WL 1258086, at *15-17, 2010 U.S. Dist. LEXIS 30931, at *47-52. Finding that analysis persuasive, we decline to defer to the 1999 informal DBPR legal opinion.
IV. Analysis — Escrow Agent
The U.S. Court of Appeals for the Eleventh Circuit concluded that section 718.202 “does not authorize a private cause of action against an escrow agent.” Double AA Int’l Inv. Group, Inc. v. Swire Pac. Holdings, Inc., 637 F.3d 1169, 1171 (11th Cir.2011) (citing United Auto. Ins. Co. v. A 1st Choice Healthcare Sys., 21 So.3d 124, 128 (Fla. 3d DCA 2009)). We agree and therefore affirm the dismissals and final judgments in favor of appellee First American Title Insurance Company, the escrow agent in the cases at hand.
V. Conclusion
Assuming the truth of the allegations in the second amended complaint, and under section 718.202 as it existed in 2006 when the purchase contracts were entered into, each buyer/appellant was entitled to have its “10 percent” deposit in an escrow account separate from the “special” escrow account used for that buyer’s “in excess of the 10 percent” deposit. Notwithstanding the Florida Legislature’s apparent intention that the 2010 amendment and new section 718.202(11) be applied retroactively, we conclude that this would impermissi-bly impair each buyer’s pre-amendment contract rights.
The dismissals and final judgments in favor of the developer and against each buyer are reversed, and the cases are remanded to the circuit court for further proceedings. The final judgments in favor of the escrow agent and against each buyer are affirmed.
CORTIÑAS, J., concurs.

. The two condominium contracts at issue are essentially identical, though involving separate units. Before oral argument, we granted the appellants' motions to consolidate the two appeals for purposes of a single reply brief. Because the cases involve the same appellees *657 and legal issues, on our own motion we now consolidate the cases for all purposes.

.The condominium purchase contracts were signed by the parties in 2006. Section 718.202 has been amended since then, as detailed below.

. § 718.202(5), Fla. Stat. (2006).

. These contracts required the developer to refund, in the event of a buyer default, any deposits held above fifteen percent of the purchase price.

. Subsection (3) also requires that the purchase contract contain a special, all uppercase legend, and prohibits the use of the “excess funds” for "salaries commissions, or expenses of salespersons or for advertising purposes.”

. The other counts alleged violations of the federal Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-1720, and the Florida Deceptive and Unfair Trade Practices Act, section 501.203, Florida Statutes (2006). Those counts were voluntarily dismissed before the entry of the final judgment under review.

. At this procedural stage, the existence of any such accounting records has not been established or disproven.

. In this extensive discussion of the 2009 opinion in Double AA, we do not overlook the additional legislative history and analysis in the U.S. District Court's findings of fact and conclusions of law in the case in early 2010. Double AA Int’l Inv. Group, Inc. v. Swire Pac. Holdings, Inc., No. 08-23444, 2010 WL 1258086, 2010 U.S. Dist. LEXIS 30931 (S.D.Fla. Mar. 30, 2010).