# Supreme Court of Florida

_____

No. SC12-75
_____

**NORTH CARILLON, LLC,**
Appellant,

vs.

**CRC 603, LLC, et al.,**
Appellees.

[January 23, 2014]

CANADY, J.

In this case we consider whether contracts for the purchase of two

condominium units were voidable by the purchasers on the ground that the

seller/developer failed to maintain the deposits paid by the buyers in escrow in the

manner required by the Condominium Act, §§ 718.101-.708, Fla. Stat. (2006). In

CRC 603, LLC v. North Carillon, LLC, 77 So. 3d 655 (Fla. 3d DCA 2011), the

Third District Court of Appeal held that the contracts were voidable under the

escrow provisions of the Condominium Act that were in force in 2006, when the

contracts were entered. The Third District also held that the constitutional

prohibition on the impairment of vested contractual rights was violated by the retroactive application of a 2010 amendment to the Condominium Act that was intended to have retroactive effect and that removed a statutory ground for determining that the contracts were voidable. The Third District therefore reversed the final judgments in favor of North Carillon, the seller/developer, which were based on dismissal for failure to state a claim. North Carillon appealed under article V, section 3(b)(1) of the Florida Constitution, which provides that this Court "[s]hall hear appeals . . . from decisions of district courts of appeal declaring invalid a state statute . . . ."

We agree with the view that the statutory provision providing for the retroactive effect of the 2010 amendment to the Condominium Act would be unconstitutional if the amendment substantively changed the prior law and impaired the existing right of the buyers to void contracts. See, e.g., Menendez v. Progressive Express Ins. Co., 35 So. 3d 873, 877 (Fla. 2010) ("[E]ven where the Legislature has expressly stated that a statute will have retroactive application, this Court will reject such an application if the statute impairs a vested right . . . ."). But we disagree with the Third District's conclusion that the 2010 amendment made a substantive change in the law. We reverse the Third District's decision because we conclude that the contracts were not voidable under the statutory provisions in force in 2006, when the contracts were entered.

# I.

With respect to contracts for the sale of condominium units in condominiums that have not been substantially completed, the Condominium Act establishes two categories of deposits, both of which are subject to escrow requirements. The underlying question presented by this case is whether a developer may maintain the two different types of deposits in a single escrow account, as North Carillon contends, or must place them in separate escrow accounts, as the buyers argue. The issue is doubly significant: the Condominium Act provides not only that a developer's failure to comply with the escrow requirements renders the contract voidable by the buyer but also that a developer's willful failure to comply is a criminal offense—a felony of the third degree.

Section 718.202, Florida Statutes (2006), sets forth the pertinent provisions of the Condominium Act that were in force when the contracts at issue here were entered:

> (1) If a developer contracts to sell a condominium parcel and the construction, furnishing, and landscaping of the property submitted or proposed to be submitted to condominium ownership has not been substantially completed in accordance with the plans and specifications and representations made by the developer in the disclosures required by this chapter, <u>the developer shall pay into an escrow account all payments up to 10 percent of the sale price</u> received by the developer from the buyer towards the sale price. . . .
> . . . .
> (2) <u>All payments which are in excess of the 10 percent of the sale price described in subsection (1)</u> and which have been received prior to completion of construction by the developer from the buyer

on a contract for purchase of a condominium parcel <u>shall be held in a special escrow account established as provided in subsection (1) and controlled by an escrow agent</u> and may not be used by the developer prior to closing the transaction, except as provided in subsection (3) or except for refund to the buyer. . . .

(3) If the contract for sale of the condominium unit so provides, the developer may withdraw escrow funds in excess of 10 percent of the purchase price from the special account required by subsection (2) when the construction of improvements has begun. . . .

. . . .

(5) The <u>failure to comply</u> with the provisions of this section <u>renders the contract voidable by the buyer</u>, and, if voided, all sums deposited or advanced under the contract shall be refunded with interest at the highest rate then being paid on savings accounts, excluding certificates of deposit, by savings and loan associations in the area in which the condominium property is located.

. . . .

(7) Any developer who <u>willfully fails to comply</u> with the provisions of this section <u>concerning establishment of an escrow account, deposits of funds into escrow</u>, and withdrawal of funds from escrow is <u>guilty of a felony of the third degree</u>, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, or the successor thereof. The failure to establish an escrow account or to place funds in an escrow account is prima facie evidence of an intentional and purposeful violation of this section.

(Emphasis added.)

In brief, section 718.202(1) requires the payment "into an escrow account" of "all payments up to 10 percent of the sale price," and section 718.202(2) provides that payments "which are in excess of the 10 percent of the sale price described in subsection (1)" "be held in a special escrow account established as provided in subsection (1) and controlled by the escrow agent." Section 718.202(5) provides that the "failure to comply with the provisions of this section

renders the contract voidable by the buyer," and section 718.202(7) provides that a "developer who willfully fails to comply" with the escrow requirements of the section "is guilty of a felony of the third degree."

In 2010, the Legislature amended the Condominium Act by adding the following provision, which was first codified in section 718.202(11), Florida Statutes (2010):

> (11) All funds deposited into escrow pursuant to subsection (1) or subsection (2) <u>may be held in one or more escrow accounts by the escrow agent</u>. If only one escrow account is used, the escrow agent must maintain separate accounting records for each purchaser and for amounts separately covered under subsections (1) and (2) and, if applicable, released to the developer pursuant to subsection (3). Separate accounting by the escrow agent of the escrow funds constitutes compliance with this section even if the funds are held by the escrow agent in a single escrow account. <u>It is the intent of this subsection to clarify existing law</u>.

(Emphasis added.) This 2010 amendment to the Condominium Act was adopted shortly after a federal district court decision was issued interpreting the escrow requirements of section 718.202. In <u>Double AA International Investment Group, Inc. v. Swire Pacific Holdings, Inc.</u>, 674 F. Supp. 2d 1344, 1350 (S.D. Fla. 2009), the court had held that "the plain language of the statute" "requires a developer to establish two separate escrow accounts if a buyer deposits more than 10 percent of the purchase price."

**II.**

- 5 -

Both sides in this case acknowledge the plain meaning rule under which an unambiguous statutory text is ordinarily given effect according to the plain meaning of its terms.  See Greenfield v. Daniels, 51 So. 3d 421, 425 (Fla. 2010) ("[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." (quoting Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984))).  And both sides contend that the plain meaning of the text supports their respective divergent interpretations of the escrow provisions in the statute.  Both sides also contend that the statutory history of section 718.202 supports their interpretation of the statute.  In addition, North Carillon argues that because section 718.202 includes a criminal penalty for the violation of the statutory escrow requirements, any ambiguity must be resolved in favor of the developer under Florida's statutory rule of lenity.  The buyers respond that the rule of lenity has no application in a civil case.

In the analysis that follows, we first examine the relevant text of the statute and conclude that it is ambiguous.  We then turn to the statutory history.  For purposes of this analysis, we assume that we may look to statutory history to resolve an ambiguity in the statutory text before resorting to application of the rule of lenity.  We conclude that the statutory history does not resolve the textual

ambiguity, and then we explain why the statutory rule of lenity applies in this civil case.

## A.

The interpretation adopted by the Third District—and the interpretation relied on by the buyers—turns on an understanding of the word "special" in the text of section 718.202. According to this interpretation, " 'special account' and 'special escrow account' are terms mandating separate accounts for deposits under section 718.202(1) and (2)." <u>North Carillon</u>, 77 So. 3d at 660. In this view, "special" means designated for a particular discrete purpose. Although this is a tenable interpretation because the reference to a "special" account occurs in subsection (2) but not in subsection (1), it is undercut by the fact that subsection (2) refers to "a special escrow account established as provided in subsection (1)." The use of the term "special" in subsection (2) suggests a separation of subsection (2) accounts from subsection (1) accounts, but the characterization of the subsection (2) account as "a special escrow account established as provided in subsection (1)" suggests an identity of the section (1) and (2) accounts. Because neither interpretation of the language of the text is unreasonable, we conclude that the text is ambiguous.

## B.

The statutory history of section 718.202 is extensive and complex. The use of the phrase "special account" predated the statutory distinction between deposits up to a certain percentage of the selling price and deposits in excess of that percentage. The phrase also predated a statutory revision requiring that the initial deposit be held by an escrow agent and a later revision requiring that any excess deposits also be held by an escrow agent. The word "special" originally was employed in the statute to designate not an escrow account but an account of the seller/developer that was not comingled with the funds of the seller/developer.

Specifically, section 711.25(1), Florida Statutes (1973), the predecessor to section 718.202, Florida Statutes (2006), provided:

> Whenever money shall be deposited or advanced on a contract for the purchase of a condominium unit prior to the filing of a notice of commencement . . . <u>such money shall be held in a special account by the seller</u> or his duly authorized agent and <u>shall not be commingled with the funds of the seller or his agent prior to the filing of the notice of commencement</u>. . . .

(Emphasis added.) In 1974, the statute was amended to define two different types of buyer deposits and require that one of those types of deposits be held in a "special account." The revised statute provided that "the developer shall establish an escrow . . . [in which] shall be deposited all payments received by the developer from the buyer . . . until the amount deposited shall equal 5 percent of the sale price." § 711.67(1), Fla. Stat. (Supp. 1974). The statute further provided that "such money in excess of 5 percent of the sale price of the parcel shall be held in a

special account by the developer . . . and shall not be used by developer prior to closing of the transaction" except in circumstances defined by subsection (3) of the statute. § 711.67(2), Fla. Stat. (Supp. 1974).

In 1976, the Legislature adopted the Condominium Act and made revisions to the deposit statute. The dividing line between the two types of buyer deposits changed from five percent of the sale price to ten percent of the sale price, and the term "special account" in section 711.67(2), Florida Statutes (Supp. 1974), became a "special escrow account" in section 718.202(2), Florida Statutes (Supp. 1976). See ch. 76-222, § 1, Laws of Fla. Notwithstanding the addition of the word "escrow" to the account description in section 718.202(2), the statute continued to state that the account for deposits over ten percent of the sale price could be held "by the developer" subject to the condition that the funds were not to be used by the developer prior to closing. § 718.202(2), Fla. Stat. (Supp. 1976).

The next pertinent revision was made in 1984. The Legislature removed the language permitting the "special escrow account" to be held by the developer and directed that "[e]very escrow account required by this section shall be established with a bank, a savings and loan association, an attorney . . ., a real estate broker . . ., or any financial lending institution having a net worth in excess of $5 million" and that "[e]very escrow agent shall be independent of the developer." See §§ 718.202(2), (8), Fla. Stat. (Supp. 1984).

From this historical background, the buyers argue that "special" has always denoted and continues to denote an account segregated for a particular purpose. From the same historical background, North Carillon contends that "special" means nothing more than that the deposits in the account were not to be commingled with the funds of the seller/developer.

The buyers' argument, on the one hand, appears to stretch the meaning of "special" in the 2006 statute beyond what it originally denoted—that is, that the deposits were not to be commingled with the seller/developer's funds. North Carillon's argument, on the other hand, appears to reduce the term "special" in the 2006 statute to a cipher since it adds nothing to the term "escrow." In short, the complex statutory history does not satisfactorily resolve the ambiguity in the text of the 2006 statute.

## C.

We thus turn to North Carillon's argument concerning the statutory rule of lenity. Section 775.021(1), Florida Statutes (2013), provides that the "provisions of the [Florida Criminal] [C]ode and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused." The rule of lenity thus comes into play when the text of a statute is "subject to competing reasonable interpretations." Paul v. State, 112 So. 3d 1188, 1195 (Fla. 2013). Section

718.202(7), which provides that the willful failure "to comply with the provisions of this section concerning the establishment of an escrow account, deposits of funds in escrow, and withdrawal of funds from escrow" is "a felony of the third degree," triggers application of the rule of lenity because the statutory language establishing the basis for an offense prosecutable under section 718.202(7) "is susceptible of differing constructions." The proper definition of the circumstances that constitute a violation of the statutory escrow requirements is necessary to establish not only a buyer's right to void a contract but also the State's ability to prosecute a developer for a criminal offense.

We reject the buyers' argument that the rule of lenity can be applied only in a criminal case. The text of a statute that establishes the basis for both civil liability and criminal liability cannot have one meaning in civil cases and another meaning in criminal cases. As the United States Supreme Court has recognized, such statutes must be interpreted "consistently, whether we encounter [their] application in a criminal or noncriminal context." Leocal v. Ashcroft, 543 U.S. 1, 11 n.8 (2004). "The rule of lenity . . . is a rule of statutory construction whose purpose is to help give authoritative meaning to statutory language. It is not a rule of administration calling for courts to refrain in criminal cases from applying statutory language that would have been held to apply if challenged in civil litigation." United States v. Thompson/Ctr. Arms Co., 504 U.S. 505, 518 n.10

- 11 -

(1992) (plurality opinion); see also Crandon v. United States, 494 U.S. 152, 158 (1989) (holding, with respect to civil action to recover funds, "because the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage").

Given the ambiguity in the statute, we apply the rule of lenity, which requires that the statute "be construed most favorably to" the developer. § 775.021, Fla. Stat. Such a construction authorizes the maintenance of deposits required by both subsection (1) and subsection (2) of section 718.202 in a single escrow account. The buyers' claims against North Carillon for the maintenance of deposits in a single escrow account therefore were properly dismissed by the trial court.

## III.

Because we conclude that the Third District did not properly interpret the escrow requirements of section 718.202 and that the trial court properly dismissed the claims against North Carillon, we reverse the decision on review and remand for further proceedings consistent with this opinion.

It is so ordered.

PARIENTE, LEWIS, LABARGA, and PERRY, JJ., concur.
POLSTON, C.J., concurs in result.
QUINCE, J., dissents.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

- 12 -

An Appeal from the District Court of Appeal – Statutory or Constitutional Invalidity

Third District - Case No. 3D10-2230

(Dade County)

Raoul G. Cantero, David P. Draigh, and Adam A. Schwartzbaum of White & Case LLP, Miami, Florida; Jason R. Block of Rennert Vogel Mandler & Rodriguez, PA., Miami, Florida,

     for Appellant

Lawrence R. Metsch of The Metsch Law Firm, P.A., Aventura, Florida; Joseph E. Altschul of Joseph E. Altschul, LLC, Fort Lauderdale, Florida,

     for Appellee

Robert Goldman of Goldman Felcoski & Stone, P.A., Naples, Florida; John W. Little, III of Gunster Yoakley & Stewart P.A., West Palm Beach, Florida; and Kennth B. Bell of Clark, Partington, Hart, Larry, Bond & Stackhouse, Pensacola, Florida,

     for Amicus Curiae The Real Property, Probate and Trust Law Section of the Florida Bar