# Supreme Court of Florida

_____

No. SC13-838
_____

**ALACHUA COUNTY, et al.,**
Petitioners,

vs.

**EXPEDIA, INC., et al.,**
Respondents.

[June 11, 2015]

PERRY, J.

This case is before this Court for review of the decision of the First District

Court of Appeal in Alachua County v. Expedia, Inc., 110 So. 3d 941 (Fla. 1st DCA

2013). In its decision, the district court certified the following question of great

public importance:

> DOES THE "LOCAL OPTION TOURIST DEVELOPMENT ACT,"
> CODIFIED AT SECTION 125.0104, FLORIDA STATUTES,
> IMPOSE A TAX ON THE TOTAL AMOUNT OF
> CONSIDERATION RECEIVED BY AN ON-LINE TRAVEL
> COMPANY FROM TOURISTS WHO RESERVE
> ACCOMMODATIONS USING THE ON-LINE TRAVEL
> COMPANY'S WEBSITE, OR ONLY ON THE AMOUNT THE
> PROPERTY OWNER RECEIVES FOR THE RENTAL OF THE
> ACCOMMODATIONS?

Id. at 951-52. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

For the reasons that we explain below, we approve the First District's decision by answering the certified question of great public importance to clarify that the tax at issue applies only to the funds received for the rental of transient accommodations.

## BACKGROUND

The present review concerns statutory interpretation of the Tourist Development Tax (hereinafter "TDT"). § 125.0104, Fla. Stat. (2014). In certifying the present question of great public importance, the First District asks this Court for guidance on whether the TDT applies to total monetary amounts online travel companies (hereinafter "OTCs") charge their customers for securing reservations for transient accommodations in certain Florida counties. We respond by answering the certified question in the negative.

The OTCs engage in business arrangements with Florida hotels, motels, and other providers of transient housing for rent (hereinafter "hotels"). The OTCs operate Internet sites on the worldwide web for purposes of allowing their customers to retrieve travel-related information pertaining to hotels, airlines, and automobile rental companies.

Alachua County, other counties, and certain county tax collectors (hereinafter "Counties") filed a joint declaratory action in the Second Judicial

Circuit, in and for Leon County against the OTCs. The Counties argued that the TDT applied to the difference between the total monetary amounts the OTCs' customers paid to them, and the lesser monetary amount the OTCs remit to the hotels. This difference is known as the markup charges. The Counties further argued that the customers, not the OTCs, are the persons who exercise the privilege that is taxable under the TDT.

The circuit court concluded that if the markup charges are subject to taxation, the Legislature must clearly inform the OTCs, by the statute, what is to be taxed. The circuit court further concluded that the statute must plainly state that OTCs are obligated to collect and remit said taxes to the Counties. However, the circuit court found that the TDT does not clearly impose any tax on the amount the OTCs charge their customers by way of the markup charges.

Although the Counties alternatively argued that the OTCs had effectively become the taxpayer who actually "rents, leases, or lets" the hotel rooms to the customers, the trial court noted that "neither the Legislature nor the Department of Revenue have yet acted to declare as much." Therefore, the trial court granted the OTCs' motion for summary judgment. The Counties appealed.

In affirming the trial court's judgment, the First District determined that

> [t]he crux of this dispute involves determining what is the privileged
> activity which the Tourist Development Tax taxes—renting a room to
> a tourist, or a tourist renting a room from a hotel? That is, did the

Legislature declare that it is a privilege to rent a hotel room in Florida, or did it declare that it is a privilege <u>to</u> operate a hotel in this state?

<u>Expedia</u>, 110 So. 3d at 944. The First District ultimately held that "the privilege being exercised for purposes of the [TDT] is renting rooms to tourists, not the other way around." <u>Id.</u> at 945 (footnote omitted).

The Counties moved the district court for rehearing en banc, or in the alternative, for certification of a question of great public importance to this Court. The First District denied the Counties' motion for rehearing en banc, but it granted their motion to certify a question of great public importance. <u>Id.</u> at 951-52. Thereafter, we granted the Counties' subsequently filed petition for discretionary review, accepted briefs on the merits from the parties and amici curiae, and heard oral arguments.

## ANALYSIS

### Standard of Review

This Court's consideration of the First District's certified question concerns a pure question of law. Therefore, our review of the First District's <u>Expedia</u> decision is de novo. <u>See generally</u> <u>Aravena v. Miami-Dade Cnty.</u>, 928 So. 2d 1163, 1166 (Fla. 2006).

### Merits

We rephrase the certified question as follows:

Are the total monetary amounts that OTCs charge their customers to secure reservations for transient accommodation rentals in Florida counties subject to taxation under section 125.0104, Florida Statutes?

And, we answer the rephrased certified question in the negative.

In answering the rephrased certified question, we examined the TDT's plain language and its antecedent statute, the Transient Rental Tax (hereinafter "TRT"). See § 212.03, Fla. Stat. (2014). In so doing, we have determined that the TDT contains no language, as the Counties assert, that clearly directs that it should be applied to the markup charges and service fees associated with merchant model transactions for hotel room rentals.

Moreover, despite the operation of a given business model transaction, the monetary amount the hotels require for occupancy is the sole determinant for the charges that are taxable under the TDT. It is evident from the substance of the Counties' alternative arguments that they misunderstand our decision in Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So. 2d 981 (Fla. 1981). Therefore, we clarify that Miami Dolphins primarily provides instruction that the TRT and TDT are statutes that should be read in pari materia to fully understand the legislative intent and function of Florida's transient rental taxation statutes.

**The Transient Rental Taxation Statutes**

Our precedent establishes that "[i]n construing statutes, [the] first consider[ation] [is] the plain meaning of the language used. [The statute's plain]

meaning controls unless it leads to a result that is either unreasonable or clearly contrary to legislative intent." J.M. v. Gargett, 101 So. 3d 352, 356 (Fla. 2012) (quoting Tillman v. State, 934 So. 2d 1263, 1269 (Fla. 2006)).  Furthermore, we have previously held that a proper conclusion about "legislative intent is determined primarily from the statute's text." Bennett v. St. Vincent's Med. Ctr., Inc., 71 So. 3d 828, 837 (Fla. 2011) (quoting Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198 (Fla. 2007)).  We, thus, look to the express language found in the statutes at issue to ascertain the Legislature's intent regarding the extent of the taxing scope.

The TDT provides, in pertinent part:

> 1.  It is declared to be the intent of the Legislature that every person who rents, leases, or lets for consideration any living quarters or accommodations in any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, condominium, or timeshare resort for a term of 6 months or less is exercising a privilege which is subject to taxation under this section, unless such person rents, leases, or lets for consideration any living quarters or accommodations which are exempt according to the provisions of chapter 212.

§ 125.0104(3)(a), Fla. Stat. (2014).  In addition, the TRT provides, in pertinent part:

> It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing, letting, or granting a license to use any living quarters or sleeping or housekeeping accommodations in, from, or a part of, or in connection with any hotel, apartment house, roominghouse, tourist or trailer camp, mobile home park, recreational vehicle park,

condominium, or timeshare resort.  However, any person who rents, leases, lets, or grants a license to others to use, occupy, or enter upon any living quarters or sleeping or housekeeping accommodations in any apartment house, roominghouse, tourist camp, trailer camp, mobile home park, recreational vehicle park, condominium, or timeshare resort and who exclusively enters into a bona fide written agreement for continuous residence for longer than 6 months in duration at such property is not exercising a taxable privilege.  For the exercise of such taxable privilege, a tax is hereby levied in an amount equal to 6 percent of and on the total rental charged for such living quarters or sleeping or housekeeping accommodations by the person charging or collecting the rental.  Such tax shall apply to hotels, apartment houses, roominghouses, tourist or trailer camps, mobile home parks, recreational vehicle parks, condominiums, or timeshare resorts, whether or not these facilities have dining rooms, cafes, or other places where meals or lunches are sold or served to guests.

§ 212.03(1)(a), Fla. Stat. (2014).  In examining the disputed language within the TDT and TRT, we find no clear legislative intent to require taxation on the total monetary charges incurred by customers who obtain reservations for hotel room rentals through the OTCs' Internet-based services.

It is undisputed that the TRT (enacted in 1949), and the TDT (enacted in 1977) were established to collect taxes on the transient rental of hotel rooms.  For reasons that we will fully address in the following section, we interpret that "person who rents" under the TDT, and "every person is exercising a taxable privilege who engages in the business of renting" under the TRT, address the same subject matter; namely, the referenced <u>person</u> is the hotel.  We reach this conclusion noting the statutory definition provided in Chapter 212, Florida Statutes: " '[p]erson' includes any individual, firm, copartnership, joint adventure,

- 7 -

association, corporation, estate, trust, business trust, receiver, syndicate, or other group or combination acting as a unit and also includes any political subdivision, municipality, state agency, bureau, or department and includes the plural as well as the singular number." § 212.02(12), Fla. Stat. (2014).

Thus, in light of the broad statutory definition of "person," we find it is reasonable to read the disputed language in the TDT as "[a hotel that] rents, . . . ." See Gargett, 101 So. 3d at 356. Similarly, for the TRT, we read the disputed language as "every [hotel] is exercising a taxable privilege [that] engages in the business of renting, . . . ." Id.

Contrary to the Counties' arguments, we see nothing in the legislative history of these closely related statutes that demonstrates the Florida Legislature intended that the tax required by the TDT and TRT pertains to anything other than the monetary amount hotels charge for room rentals. Furthermore, the record before us supports our conclusion that, since its enactment of the respective statutes, the Legislature has chosen not to revise the statutes or otherwise specify that taxable "consideration" with respect to hotel room rentals includes the markup charges the OTCs include within the total charges to their customers for securing reservations. In other words, since the inception of the transient rental tax statutes, the taxable portion of such transactions has been based solely on the monetary

amount a hotel actually sets and receives for the transient rental of hotel rooms in Florida.

## Relevant Business Models for Transient Rental Transactions

Despite the plain language in the statutes at issue, the Counties argue that, under so-called merchant model transactions, the full amount of charges the OTCs require of their customers for Florida hotel room reservations is subject to taxation under the TDT. We disagree.

The record before us shows that the amount the OTCs charge their customers for facilitating Florida hotel room reservations is fully negotiated between the OTC and hotel. Thus, under merchant model transactions, the markup portion of the total charges reflects the agreed-upon remuneration for the services an OTC provides by way of its Internet-based website. Conversely, under the agency model, travel companies facilitate hotel room reservations in a similar fashion as do the OTCs under merchant model transactions. However, after a hotel room is reserved, the customer makes all payments for the room rental directly to the hotel. In turn, the hotel remits to its travel company partners a negotiated monetary commission based on the hotel room rentals the travel companies facilitate. Both business models, therefore, achieve the same end—capturing the monetary costs hotels require for occupancy of transient lodging.

The Counties argue that the taxable amount under the TDT is contingent upon which business entity receives the payment associated with the confirmed hotel reservation. We reject this argument because it presumes that a person other than the hotel exercises the taxable privilege. Instead, we conclude that the statute concerns only the amount of funds a hotel requires for a customer to occupy the hotel room it rents on a transient basis. Thus, it is irrelevant to the taxation issue at hand which actors are involved and what roles they play in transactions for facilitating transient hotel room reservations. Under either transaction model, the tax required by the TDT will be based solely upon the transient rental rate of a room, that is, the price of possession established by the hotel for which it is in the business of selling.

Finally, as the OTCs and their supporting amici curiae point out, when in the past several sessions of the Legislature, the markup charges taxation issue has been raised as proposed legislation, the Legislature has repeatedly declined to revise the TRT or TDT to require such taxation. Accordingly, we hold that the Legislature's presumptive awareness of the issue for which the Counties now seek redress reflects the Legislature's willingness to maintain the status quo of not subjecting the OTCs' markup charges to the transient rental taxes. See generally Dep't of Revenue v. Bonard Enter., Inc., 515 So. 2d 358, 359 (Fla. 2d DCA 1987) ("The [L]egislature is presumed to have been aware of the Department's foregoing

position.  Not having thereafter amended the relevant legislation, the [L]egislature may be considered to have thereby implicitly affirmed that position as reflecting the legislative intent." (citing White v. Johnson, 59 So. 2d 532 (Fla. 1952))).

In the next section, we explain that the Counties have misread Miami Dolphins insofar as they rely on it as a basis for concluding that the markup portion of the OTCs' charges is subject to the TDT.

**Our Prior Decision**

The Counties rely on our previous statement that the TDT tax is "imposed on all renters of the covered types of premises" to suggest that we previously held that hotel guests are exercising the taxable privilege subject to the TDT.  See Miami Dolphins, 394 So. 2d at 989.  Contrary to the Counties' assertion, in Miami Dolphins we did not hold that the customers of transient hotel rooms are the persons exercising the privilege that is taxable by the TDT.  In fact, as the First District correctly discussed, our Miami Dolphins decision does not address whether the occupants of rented hotel rooms are exercising a taxable privilege. Expedia, 110 So. 3d at 945 ("The [supreme court] did not hold, nor was it asked to address, whether the taxable privilege addressed in the [TDT] is exercised by those renting rooms from hotels or by those renting rooms to tourists.").

Nevertheless, the Counties assert that because the TDT and TRT conflict as to what is the taxable privilege, there is no need for the statutes to be read in pari

- 11 -

materia. In arriving at such a conclusion, the Counties rely on an isolated portion of the instruction provided in Miami Dolphins, that states: "the [TDT] may modify and conflict with the [TRT] as needed." Miami Dolphins, 394 So. 2d at 988. However, the explanation in Miami Dolphins that the TDT should have the ability to conflict with the TRT should be contextually understood. Rather than finding irreconcilable conflict between the TDT and TRT, in Miami Dolphins we provided clear guidance for why the statutes should be read in pari materia.

> We are inclined . . . to adopt the reasoning of the circuit court . . . .
> The circuit court found that the [TDT] is to be read in pari materia with chapter 212, Florida Statutes, the state transient rentals tax, and that when such is done, the former is "complete and whole in every way with all legal policies of significance set and enacted by the legislature . . . ."
> When read in pari materia with chapter 212, Florida Statutes, the [TDT] contains all of the elements and establishes the policy necessary to implement the [L]egislature's goals. Any omissions therein are to be filled by the applicable provisions of the transient rentals tax. In the event of conflict between any provisions of the two, the provisions of the act will govern. While its provisions are used to fill any gaps in the act, the transient rentals tax is simply the base on which the [TDT] rests; the [TDT] may modify and conflict with the transient rentals tax statute as needed.
> . . . .
> Clearly, the [TDT] in the case sub judice need not be stricken as an unconstitutional delegation of legislative powers. If read in conjunction with chapter 212, it passes muster for completeness, certainty and reviewability.

Id. at 987-88.

In light of our previous statements, we reiterate in this case that the TRT and TDT should be read in pari materia to fully understand the purpose and function of

- 12 -

these transient rental taxation statutes. Namely, the TRT and TDT have been enacted to capture tax revenue from the charges Florida hotels require for transient rentals of lodging accommodations. In Miami Dolphins, our acknowledgement that the statutes at issue can "conflict" reflects an understanding that the TDT was enacted for the specific purpose of providing tax revenue to Florida counties for the funding of statutorily specified initiatives that promote tourism or otherwise foster the tourism industry. See § 125.0104(5), Fla. Stat. (2014).

Because the TRT, which was enacted nearly thirty years earlier, does not have such restraints on the uses of tax revenue as does the TDT, in Miami Dolphins we acknowledged that the two statutes will invariably conflict "as needed" so that the TDT may be able to fulfill the Legislature's intent that revenue streams from that statute have only specific authorized uses. See § 125.0104(5), Fla. Stat. (2014). In contrast, the tax revenue from the TRT becomes part of the State's general fund, which may be used for any lawful purpose the Legislature decides.

## CONCLUSION

We are bound by the constraints of existing jurisprudence to interpret Florida's TDT in accordance with the legislative intent found in the statute's plain language. See Gargett, 101 So. 3d at 356; Bennett, 71 So. 3d at 837. Thus, we conclude today that the language found in both of Florida's transient rental statutes

is not ambiguous, and it does not provide a basis for interpreting that the TDT

provides authority for the Counties to promulgate ordinances that subject the total

monetary amounts OTCs charge their customers to the tax.  Only the transient

rental rate, which is set by the hotel and collected by the OTC in accordance with

its contract with the hotel, is subject to taxation pursuant to the TDT.  Accordingly,

we answer the rephrased certified question in the negative and, therefore, approve

the First District's Expedia decision.

Additionally, we commend counsel for the parties, as well as the amici

curiae, for the high quality of the arguments presented in this closely contested

case.  The principled advocacy by the members of the Bar provided this Court with

welcomed and valued assistance in our continuous efforts to resolve important

questions of law.

It is so ordered.

LABARGA, C.J., and QUINCE, J., concur.
PARIENTE, J., concurs in result with an opinion.
CANADY, J., concurs in result.
LEWIS, J., dissents with an opinion, in which POLSTON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND
IF FILED, DETERMINED.

PARIENTE, J., concurring in result.

I agree with the majority's conclusion that only the monetary amount

ultimately received by a hotel—not the total monetary amount paid by customers

- 14 -

to an online travel company (OTC)—is subject to the Tourist Development Tax (TDT). I concur in result, however, because I disagree with the statutory construction analysis applied by the majority to reach this conclusion. In my view, the TDT statute is not as clear and unambiguous as either the majority or the dissent claim. See majority op. at 13-14; dissenting op. at 19-20.

There are at least two possible reasonable constructions of the TDT statute: namely, (1) the construction endorsed by the majority that the tax is intended to be placed on the amount received by the hotels, or (2) the construction endorsed by the dissent that the tax is intended to be placed on the total amount paid by hotel guests to the OTCs—an amount which would include the markup received by the OTCs. In other words, the legislative intent is not clear.

The fact that both the majority and the dissent conclude that the statute is clear and unambiguous as to their conflicting interpretations is in and of itself an illustration of the statute's ambiguity. See Bush v. Holmes, 919 So. 2d 392, 408 (Fla. 2006) ("Ambiguity suggests that reasonable persons can find different meanings in the same language." (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 452, 455 (Fla. 1992))). This lack of clarity of legislative intent is further evident in considering whether the OTCs are the entities that "rent[], lease[], or let[] for consideration" within the meaning of the TDT statute, § 125.0104(3)(a)1., Fla. Stat. (2014), as well as whether, after viewing the

- 15 -

TDT statute in pari materia with the Transient Rental Tax statute, the entities subject to the Transient Rental Tax statute are the same entities as covered in the TDT statute.

When a statute is ambiguous, courts must attempt to discern legislative intent through statutory construction. See Bautista v. State, 863 So. 2d 1180, 1185 (Fla. 2003). The principle of statutory construction most applicable here is that where ambiguity exists in a taxing statute, such as the TDT statute, the statute must be construed in a manner that favors the taxpayers. See Harbor Ventures, Inc. v. Hutches, 366 So. 2d 1173, 1174 (Fla. 1979). Thus, I agree with the majority that, under the current legislative scheme, the tax should be levied on only the amount ultimately received by the hotels, which is the lower amount because it does not include the markup received by the OTCs.

But I disagree with the majority's reliance on the Legislature's inaction with respect to amending the statutes to clarify its intent regarding the markup charges. See majority op. at 10-11. Legislative inaction, at times, may be utilized as a basis for statutory construction when there has been legislative inaction subsequent to a judicial construction of the statute. See, e.g., Goldenberg v. Sawczak, 791 So. 2d 1078, 1081 (Fla. 2001). Prior to the current opinion in this case, this Court has not had occasion to interpret the relevant statute. Thus, I would not attribute any

significance that rises to the level of statutory construction to the Legislature's inaction in this context.[1]

If anything, the record reveals that the Florida Cabinet has been struggling with this issue for some time without a definitive resolution. For example, at a Cabinet meeting in June of 2011, Florida Commissioner of Agriculture Adam Putnam expressed the view that this is "a significant policy matter that one way or the other the Legislature is going to have to speak to." At that same Cabinet meeting, the Executive Director of the Florida Department of Revenue (DOR) stated, "We think that the statute is unclear. We think the Legislature should

---

1. Additionally, prior to the First District Court of Appeal's 2013 opinion we review here, no appellate court had ruled on the merits of this issue. In Orange County v. Expedia, Inc., 985 So. 2d 622, 630 (Fla. 5th DCA 2008), the Fifth District Court of Appeal declined to address this issue, when it reversed the trial court's dismissal of Orange County's complaint seeking a declaratory judgment that the TDT is due on the markup and remanded to the trial court to consider the County's declaratory judgment action. On remand, the trial court denied the County's motion for summary judgment, holding that the tax did not apply to the markup received by the OTCs, construing the statute against the taxing authority and in the light most favorable to the taxpayer. Orange Cnty. v. Expedia, Inc., No. 48-2006-CA-2104-O, 2011 WL 7657975 (Fla. 9th Cir. Ct. Jan. 20, 2011). The issue had also been raised in federal trial courts with inconclusive results. See, e.g., Cnty. of Monroe v. Priceline.com, Inc., 265 F.R.D. 659 (S.D. Fla. Mar. 15, 2010) (granting class certification as to the issue of whether the TDT applies to the markup charged by the OTCs); Brevard Cnty. v. Priceline.com, Inc., No. 6:09-cv-1695-Orl-31KRS, 2010 WL 680771 (M.D. Fla. Feb. 24, 2010) (denying the OTC's motion to dismiss with respect to whether the TDT applies to the markup); Leon Cnty. v. Hotels.com, L.P., No. 06-21878-CIV-HUCK/SIMONTON, 2006 WL 3519102 (S.D. Fla. Dec. 6, 2006) (denying the OTC's motion to dismiss as to whether the TDT applies to the markup).

- 17 -

clarify it." The DOR has apparently not taken an official position on the correct interpretation of the statute, except to state that the statute is unclear.

Undoubtedly, the counties would like to receive the tax income resulting from this untapped stream of revenue, and apparently the hotels would prefer for the OTCs to pay a higher tax to help level any competitive disadvantage. After all, the markup amounts received by the OTCs are, in general, a significant percentage of the total amount paid by hotel patrons who book hotel rooms through the OTCs—ranging between twenty-five and forty-five percent, according to the DOR's 2009 estimates. On the other hand, these markups are the result of business arrangements willingly entered into by the hotels.

The Florida Association of Destination Marketing warns in an amicus curiae brief that if this Court sides with the OTCs—which is effectually the result of today's decision—the major hotel chains may create their own merchant motels, and the Association further predicts dire consequences in the form of a drastic reduction of tax revenues to the counties. Conversely, other amici curiae, such as the American Society of Travel Agents and the Florida Chamber of Commerce, argue that increased taxes would have a chilling effect on tourism and result in tax revenue losses to the government.

These types of policy concerns are quintessentially within the legislative domain and could and should be addressed by the Legislature. It is not this Court's

place to impose its view of the better policy, especially when it comes to a taxation scheme. See, e.g., Rollins v. Pizzarelli, 761 So. 2d 294, 299 (Fla. 2000) ("An interpretation of a statutory term cannot be based on this Court's own view of the best policy.").

Because the statute is not clear and unambiguous, I would rely primarily on the principle that the lack of clarity in the statutory language should be construed in favor of the taxpayers and against the taxing authority. Thus, I concur with the result reached by the majority and would adopt the reasoning of the First District in Alachua County v. Expedia, Inc., 110 So. 3d 941 (Fla. 1st DCA 2013).

LEWIS, J., dissenting.

I respectfully dissent because I would conclude that the plain and ordinary language of the TDT statute requires the tax to be levied on the full consideration charged by an OTC that uses the merchant model business plan.[2] The statute straightforwardly provides that the "[t]ax shall be due on the consideration paid for occupancy . . . ." § 125.0104(3)(a)2.a., Fla. Stat. (2014). Additionally, the statute directs that "[t]he tourist development tax shall be levied, imposed, and set . . . at a

---

2. Under the merchant model business plan, customers reserve a hotel room on the OTC webpage and pay the OTC directly for the transaction. The OTC later transmits a discounted payment for the room reservation to the hotel and retains the rest as a facilitation fee or service charge. Currently, and under the result reached by the majority, the TDT is levied on only the portion of the consideration paid to the OTC that is remitted to the hotel, and not the service charge that is retained by the OTC.

rate of 1 percent or 2 percent of each dollar and major fraction of each dollar of the total consideration charged for such lease or rental." § 125.0104(3)(c) (emphasis supplied). Nothing in this language suggests that the consideration paid to secure the occupancy of a hotel room may be divided up such that the TDT is levied on only a portion of the transaction.

As recognized by the majority, when statutory language is unambiguous, the statute must be given its plain and obvious meaning. See majority op. at 6; see also N. Carillon, LLC v. CRC 603, LLC, 135 So. 3d 274, 277 (Fla. 2014). The total consideration charged is the total amount charged to the customer to reserve the hotel room, regardless of whether that reservation is made through an OTC or directly through the hotel. To levy the tax on only a portion of the consideration charged is contrary to the plain language of the statute. However, despite the clear intent expressed by the words "total consideration charged," the majority nonetheless concludes that the language of the statute does not "require taxation on the total monetary charges incurred by customers who obtain reservations . . . through the OTCs' Internet-based services." majority op. at 7 (emphasis supplied).

An OTC customer pays one lump sum for the hotel room to the OTC. This lump sum, referred to by the OTCs as the "offer price," "nightly reservation rate," "room cost," or "room rate," includes the bundled-together charges for the discounted room reservation and the markup for services charged by the OTC, with

- 20 -

no indication of how the payment is allocated between these charges. The customer is unaware of what portion of the consideration paid to the OTC is transferred to the hotel, and knows only that the "room cost" or "room rate" is the amount he or she must pay to reserve the right to occupy the hotel. Accordingly, the only clear and common sense reading of the statute is that the "total consideration charged for occupancy" is the total amount the customer is charged to reserve the hotel room, or, in other words, the total amount paid to the OTC.

Additionally, the statute directs that the tax shall be charged by the party that receives the consideration for the lease or rental and collected from the customer at the time that he or she pays such consideration. See § 125.0104(3)(f). In a merchant model transaction, the customer makes his or her payment directly to the OTC, not the hotel, and in fact never makes a payment to the hotel for the room reservation.[3] Although the hotel receives payment for the room reservation, the OTC remits this payment. Because the OTC is not the customer, the plain meaning of the statute is that the TDT is to be collected on the total consideration paid to the OTC at the time of the transaction between the OTC and the customer.

Moreover, the substance of the transaction is that the customer submits a payment to the OTC for the right to occupy the hotel room. The markup charges

_____

3. The customer does pay the hotel for incidentals he or she incurs during the stay.

- 21 -

for service are part of the transaction that grants the customer the right of occupancy, and such charges are only incidental to the predominant purpose of the transaction—the reservation of the hotel room. In resolving questions that relate to tax liability, the relevant consideration is the substance of the transaction, rather than the form. See Leon Cnty. Educ. Facilities Auth. v. Hartsfield, 698 So. 2d 526, 529 (Fla. 1997) (citing Bancroft Inv. Corp. v. City of Jacksonville, 27 So. 2d 162, 171 (Fla. 1946)). The interpretation given to the statute by the majority allows hotels to place form over substance. Should hotels wish to reduce the amount of TDT paid, they can simply collect the tax on a price charged exclusively for the use of the room, then label various supplies and benefits traditionally included in a hotel reservation as services—housekeeping services, room supplies, et cetera— thereby avoiding tax on these "services."

Further, although two different models may be used by travel companies— the agency model or the merchant model—the TDT is imposed on the full consideration paid by the customer for the right to occupy the room under only the agency model. The majority concludes that because the consideration for both the travel agency's services and the hotel room are charged by the hotel under the agency model, the entire amount is taxable under the TDT. See majority op. at 10. Under this holding, by categorizing a portion of the consideration as a service charge, hotels are able to avoid tax liability on a portion of the transaction.

However, regardless of which business model is employed, the purpose and result of the transaction is the same—to reserve a hotel room with the aid of a travel company. Because the substance of the transactions are the same, the same tax liability should be imposed. See Hartsfield, 698 So. 2d at 529 (citing Bancroft Inv. Corp., 27 So. 2d at 171). Moreover, with respect to excise taxes, all similarly situated taxpayers should be treated alike. See Gray v. Cent. Fla. Lumber Co., 140 So. 320, 325 (Fla. 1932).

Additionally, reading the statute to apply to the total consideration charged by an OTC would be consistent with the administrative rule promulgated by the Florida Department of Revenue that interprets the statute to require that the tax be charged on the full amount paid to an OTC. Rule 12A-1.061(4)(b)1. of the Florida Administrative Code states that a rental charge includes "any charge or surcharge to guests or tenants for the use of items or services that is required to be paid by the guest or tenant as a condition of the use or possession, or the right to the use or possession, of any transient accommodation." (Emphasis supplied). The interpretation given to a statute by an agency charged with the enforcement of that statute is afforded great deference. See Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So. 2d 320, 323 (Fla. 2001).

Several other state and federal courts have also reached this result. See Vill. of Rosemont, Ill. v. Priceline.com Inc., No. 09-C-4438, 2011 WL 4913262 (N.D.

Ill. Oct. 14, 2011); see also City of Charleston, S.C. v. Hotels.com, LP, 586 F. Supp. 2d 538 (D.S.C. 2008); Expedia, Inc. v. City of Columbus, 681 S.E.2d 122 (Ga. 2009). But see Expedia, Inc. v. City & Cnty. of Denver, Co., No. 13CA0779, 2014 WL 2980979 (Colo. App. July 3, 2014) (concluding that the Lodger's Tax ordinance does not unambiguously include OTC service fees, and holding that the tax does not apply to such fees). Although the wording of the various tax statutes differs, the substance of the tax is similar. For example, the Illinois statute at issue in Rosemont provided that a tax of 7% of the room rental rate was to be imposed on the renter, and would be collected by the hotel or motel. 2011 WL 4913262, at *1. The Illinois court concluded that the OTC service fee was part of the agreement reached for access to the room, and therefore was subject to the tax. Id. at *3. Similarly, in City of Columbus, the statute provided that the tax would be charged on lodging charges actually collected. 681 S.E.2d at 125. The court there held that because the room rate offered by the OTC included the service fee, that fee was taxable under the statute. Id. at 128. I agree with these cases, and would hold here that the service fees charged by OTCs are part of the total consideration and are therefore subject to the TDT.

Accordingly, for the reasons stated above, I respectfully dissent.

POLSTON, J., concurs.

- 24 -

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

First District - Case No. 1D12-2421

(Leon County)

Roberto Martínez, Maureen Elizabeth Lefebvre and Stephanie Anne Casey of Colson Hicks Eidson, Coral Gables, Florida; Robert Lowry Nabors and Harry Frazier Chiles of Nabors Giblin & Nickerson, P.A., Tallahassee, Florida; Edward Alexander Dion of Nabors Giblin & Nickerson, P.A., Fort Lauderdale, Florida,

for Petitioners

Mark Elliott Holcomb of Madsen Goldman & Holcomb, LLP, Tallahassee, Florida; and Darrel J. Hieber of Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California, on behalf of priceline.com Incorporated, Travelweb LLC and Lowestfare.com LLC,

for Respondents

Larry Smith, Deputy County Attorney, and Mary Griffo Jolley, Assistant County Attorney, DeLand, Florida,

for Amici Curiae County of Volusia and School Board of Volusia County, Florida

Virginia Saunders Delegal, General Counsel, Tallahassee, Florida,

for Amicus Curiae Florida Association of Counties, Inc.

Major Best Harding, Ruth E. Vafek and Steven Michael Hogan of Ausley & McMullen, P.A., Tallahassee, Florida,

for Amicus Curiae Florida Association of Destination Marketing Organizations

Cynthia Skelton Tunnicliff of Pennington, P.A., Tallahassee, Florida; Peter M. Dunbar and Ashley Elizabeth Gault of Dean Mead, Tallahassee, Florida,

> for Amici Curiae American Hotel and Lodging Association and Associated Industries of Florida

Jon Cameron Moyle, Jr. of the Moyle Law Firm, P.A., Tallahassee, Florida; Andrew Jeffrey Meyers, Chief Appellate Counsel, and Joni Armstrong Coffey, Broward County Attorney, Fort Lauderdale, Florida; Andrew Woodford Mai, County Attorney, Office of the Osceola County Attorney, Kissimmee, Florida; and Gary Cruciani of McKool Smith PC, Dallas, Texas,

> for Amici Curiae Broward County, Florida and Osceola County, Florida

Stephen H. Grimes and James Mann Ervin, Jr. of Holland & Knight LLP, Tallahassee, Florida,

> for Amicus Curiae Florida Chamber of Commerce, Inc.