THOMAS, J.
In this case before us, we address the Tourist Development Tax, codifed in section 125.0104, Florida Statutes, and levied pursuant to Florida’s Local Option Tourist Development Act of 1977. The question presented on appeal is whether the Tourist Development Tax (“Tax”) applies to the entire amount that Appellees (“Online Travel Companies” or “Companies”) collect from hotel customers who reserve their hotel room through Online Travel Companies. We find that the additional sums of money earned by the Companies are not taxable. And as required by Florida Supreme Court precedent, we must read the statute “strongly in favor of the taxpayer and against the government.” Maas Bros., Inc. v. Dickinson, 195 So.2d 193, 198 (Fla.1967). Thus, we affirm the trial court’s ruling that the Tax applies only to the amount of money the Companies send to the hotels for the reserved rooms, and not to the additional compensation retained by the Companies. As the trial court here correctly determined, it is for the Legislature, and not the judiciary, to decide whether to apply the Tax to the full amount that the Companies charge their customers who utilize their website to obtain a hotel reservation.[1]

Factual & Procedural Background

Online Travel Companies operate websites that allow consumers to view comparative information about competing travel service providers, such as hotels, car rental companies, and airlines. If a customer makes a reservation request from one of the Companies’ websites, that Company submits a reservation request to the hotel on behalf of the customer. The hotel decides whether to accept the request, based on rate and availability, and if the hotel chooses to accept the reservation, the hotel makes the reservation in the customer’s name. The Company then collects the total payment directly from the customer when the reservation is completed, and sends a portion of the payment to the hotel. The customer pays nothing to the hotel for the room. Upon arrival, the hotel provides the hotel room to the customer.[2]
*943 Appellants asserted below that the Tourist Development Tax applied to the difference between the monetary amount paid to the hotel and the amount collected by the Companies from consumers using their websites. In their declaratory action, Appellants asserted that the Companies were exercising a taxable privilege by renting, leasing or letting hotel rooms; however, in their summary judgment motion, Appellants argued that the taxable privilege at issue was being exercised not by the Companies, but by tourists renting hotel rooms.
Thus, the trial court found that it first had to determine “who and what the Legislature intends to tax” — tourists who utilize hotels and motels in Florida, or “the hotels and motels themselves for the privilege of doing business here?” If the Tax was intended to apply to the consumer, then the full amount paid by the consumer to the Companies would be subject to the Tax, and the Companies would be obligated to collect and remit the Tax on the amount involved in the transaction which exceeded the amount the Companies pay to the hotel. But “[i]f the privilege the Legislature seeks to tax is the opportunity of operating a hotel in Florida, which was the Legislature’s clear intention in 1949 when it passed the Transits Rental Tax (TRT) under Florida Statute 212.03, then the hotel in which the tourist stays must collect the tax on the lesser amount that the hotel receives for the room and submit that lesser amount of tax to the counties.”
The trial court noted that the Tax is currently paid only on the amount received by hotels, not the “mark-up realized” under the Merchant Model, and determined that if this mark-up “is to be subjected to the [Tax] in the future the Legislature, not the Court, must by statute clearly inform the [Companies] of what is to be taxed and that the [Companies] are responsible for collecting and remitting the tax to the counties.” The court also found that the Tax statute, “as currently written does not clearly impose the [Tax] on the amount that the [Companies] charge to their customers,” and that this ambiguity must be resolved in the Companies’ favor “and against extending the reach of the taxing authority.”
The court also addressed Appellants’ alternative argument that the Companies’ Merchant Model meant that the Companies “have morphed from a pure service provider matching the tourists with a hotel owner into a taxpayer who actually ‘rents, leases, or lets’ the rooms to the tourist as defined by the statute.” The court found that the Companies “may have brought themselves within the reach of the [Tax],” but that neither the Legislature nor the Department of Revenue have yet acted to declare as much. Thus, the court granted the Companies’ motion and denied Appellants’ motion.[3]

Analysis

The Tourist Development Tax was enacted in 1977. It allows participating counties to assess what is commonly called a “bed tax” for hotel stays within their territorial limits. The statute provides:
It is declared to be the intent of the Legislature that every person who rents, leases, or lets for consideration any living quarters or accommodations in any hotel, apartment hotel, motel, resort motel ... for a term of 6 months or less is exercising a privilege which is subject to taxation under this section, unless such person rents, leases, or lets for *944 consideration any living quarters or accommodations which are exempt according to the provisions of chapter 212.
§ 125.0104(3)(a)l., Fla. Stat. (emphasis added).
This tax is “in addition to any other tax imposed pursuant to chapter 212 and in addition to all other taxes and fees and the consideration for the rental or lease.” § 125.0104(3)(e), Fla. Stat. The reference to chapter 212 addresses the statewide bed tax, known as the “Transient Rentals Tax” authorized in the “Florida Revenue Act of 1949” codified at section 212.01, et. seq., Florida Statutes. Section 212.03(l)(a), Florida Statutes, is similar to section 125.0104(3)(a)l. It provides:
It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing, letting, or granting a license to use any living quarters or sleeping or housekeeping accommodations in, from, or a part of, or in connection with any hotel....
§ 212.03(l)(a), Fla. Stat.
The crux of this dispute involves determining what is the privileged activity which the Tourist Development Tax taxes — renting a room to a tourist, or a tourist renting a room from, a hotel? That is, did the Legislature declare- that it is a privilege to rent a hotel room in Florida, or did it declare that it is a privilege to operate a hotel in this state? Appellants argue that the plain language of the statute states that it is tourists who are exercising a privilege, not the hotels. We respectfully disagree.
Both the Tourist Development Tax and the Transient Rentals Tax impose a duty to charge, collect, and remit the bed tax. See § 125.0104(3)(f), Fla. Stat. (“The tourist development tax shall be charged by the person receiving the consideration for the lease or rental, and it shall be collected from the lessee, tenant, or customer at the time of payment of the consideration for such lease or rental.”); § 125.0104(8)(a), Fla. Stat. (“Any person who is taxable hereunder who fails or refuses to charge and collect from the person paying any rental or lease the taxes herein provided ... is, in addition to being personally liable for the payment of the tax ... ” criminally liable.);[4] § 212.03(2), Fla. Stat. (“The tax provided for herein shall be in addition to the total amount of the rental, shall be charged by the lessor or person receiving the rent in and by said rental arrangement to the lessee or person paying the rental, and shall be due and payable at the time of the receipt of such rental payment by the lessor or person, as defined in this chapter, who receives said rental or payment.”). Logically, therefore, that duty is imposed on the hotels, not the tourist. Thus, although the tourist is obligated to pay the tax when it is charged, the tourist is not obligated to charge himself the tax, collect it from himself, or remit it to the proper taxing authority. That duty is imposed on hotels, motels, and others for exercising the privilege of engaging in the business of renting rooms to consumers.
Appellants contend that their position that the taxable privilege is exercised by tourists is supported by our supreme court’s opinion in Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla.1981). We disagree. In that case, the appellant argued that the Tourist Development Tax violated the equal protection clause in the United States Constitution, because the “county is attempting to impose a tax on nonresidents alone on the privilege of renting living space for less *945 than six months.” Id. at 988. We note, however, that this was the appellant’s characterization of the issue. The supreme court rejected the equal protection argument, observing that the Tourist Development Tax is “imposed ... on anyone who rents certain kinds of living space for a term of six months or less,” and “is imposed on all renters of the covered types of premises” regardless of whether they are residents or non-residents. Id. at 989. The court did not hold, nor was it asked to address, whether the taxable privilege addressed in the Tourist Development Tax is exercised by those renting rooms from hotels or by those renting rooms to tourists. It simply recognized the obvious — the tax is imposed on tourists and residents and collected by the hotels.
Furthermore, the court also held that the Transient Rental Tax statute is to be read together with the Tourist Development Tax statute. Id. at 987-88. As with the latter, the ultimate person paying the Transient Rental Tax is the tourist, not the hotel. In both instances, the Legislature determined that operating a hotel in a county is a privilege “subject to taxation,” and with that privilege comes the obligation to collect the Tax from the customer.
Thus, we hold that the privilege being exercised for purposes of the Tourist Development Tax is renting rooms to tourists, not the other way around.[5] This leaves us with Appellants’ alternative argument that the Companies have an obligation to charge the Tourist Development Tax on the entire amount they collect from customers, not just the portion of that amount they forward to the hotels.
Again, the statute states that the local option tax is “due on the consideration paid for occupancy in the county .... ” § 125.0104(3)(a)2.a., Fla. Stat. (emphasis added). It also provides that the tax is levied on the “total consideration charged for such lease or rental.” § 125.0104(3)(c), Fla. Stat. (emphasis added). This tax is to be charged by the “person receiving the consideration for the lease or rental .... ” § 125.0104(3)(f), Fla. Stat. (emphasis added). Once charged and collected, the person “receiving the consideration for such lease or rental” must remit the tax to the Department of Revenue. § 125.0104(3)(g), Fla. Stat. (emphasis added).
It is well-established law in Florida that courts must “construe tax statutes in favor of taxpayers where an ambiguity may exist.” Harbor Ventures, 366 So.2d at 1174. Here, because the legislature has not provided a statutory definitional scheme to create special meanings for the terms “rents, leases, or lets for consideration,” the court must give those words their ordinary and common usage. See Fla. Dep’t of Revenue v. New Sea Escape Cruises, Ltd., 894 So.2d 954, 961 (Fla.2005).
*946 To “rent, lease or let” in ordinary meaning denotes the granting of possesso-ry or use rights in property. Inherent in that idea is the notion that one actually has sufficient control of the property to be entitled to grant possessory or use rights. Thus, the consideration received for the “lease or rental” is that amount received by the hotels for the use of their room, and not the mark-up profit retained by the Companies for facilitating the room reservation. See also Fla. Admin. Code R. 12A-1.061(3)(a) (“Rental charges or room rates for the use or possession, or the right to the use or possession, of transient accommodations are subject to tax....”). Notably, section 125.0104(3)(e), Florida Statutes, recognizes the difference between taxes and fees on the one hand, and financial consideration on the other: “The tourist development tax shall be in addition to any other tax imposed pursuant to chapter 212 and in addition to all other taxes and fees and the consideration for the rental or lease.” See also Fla. Admin. Code R. 12A-1.061(3)(b) (“Rental charges or room rates include any charge or surcharge to guests or tenants for the use of items or services that is required to be paid by the guest or tenant as a condition of the use or possession, or the right to the use or possession, of any transient accommodation.”). Thus, the tax at issue is on the actual rate paid for occupancy of the room, that is, the consideration for the room itself (the “rental or lease”), not any taxes or other fees.
Indeed, “rental” is defined as “income received from rent.” Black’s Law Dictionary, 1300 (7th ed. 1999). Additionally, “net rent” is defined as the “rental price for property after payment of expenses, such as ... taxes.” Id. at 1299. Also, in interpreting section 212.03(2), Florida Statutes, this court in Florida Revenue Commission v. Maas Bros., Inc., explained that it is not “the incident of payment and receipt of the rental charged that constitutes the taxable transaction and creates the tax liability” under the Act, but engaging in the business of renting space. 226 So.2d 849, 852-53 (Fla. 1st DCA 1969).
The Companies are simply conduits through which consumers can compare hotels and rates and book a reservation at the chosen hotel. They do not grant pos-sessory or use rights in hotel properties owned or operated by third-party hoteliers, as contemplated by the Tourist Development Tax enabling statute or the counties’ ordinances. In this role, the Companies collect the monies owed for the room, including taxes and fees, and pass on to the hotels the money for the room rental and the taxes on the price of the room. The consideration the Companies ultimately keep is not for the rental or lease, but for their service in facilitating the reservation.
At the risk of belaboring the obvious, the Companies do not own, possess or have a leasehold interest to convey in any hotel room, but merely transfer a reservation request from the tourist to a hotel.
The Companies are not in the business of renting, leasing, letting, or granting licenses to use transient accommodations, as they are online travel companies, not hoteliers. Similarly, the difference between the fees they charge their customers, and what the hotels require be paid to place a customer in a room, is not “solely for the use or possession” of the hotel room. Rather, the Companies operate their businesses, including sophisticated websites, to the benefit of both their customers and the hotels. The Tourist Development Tax does not plainly evince an intention to include the additional fees that Companies charge for advertising hotel facilities, setting up internet websites, and forwarding and assisting in the making of reservations on behalf of hotel customers. The rent itself — the amount charged by the hotels *947 for allowing customers to occupy their rooms — is what has been taxed.

Conclusion

For the foregoing reason, we AFFIRM the trial court’s summary judgment in favor of Appellees, and its denial of Appellants’ motion for summary judgment.
AFFIRMED.
DAVIS, J., concurs.
PADOVANO, J., Dissents with Opinion.

. There have been several proposed legislative bills to expressly include or exclude the Companies from the Tourist Development Tax. See Fla. HB 1241 (2010); Fla. HB 335 (2010); and Fla. HB 493 (2011).

. This process is known as the "merchant model” which differs from the "agency model” in that, with the latter, the consumer pays the hotel for the room and the hotel then remits a commission to the Online Travel Company.

. This issue was the subject of litigation in the Ninth Judicial Circuit, in addition to the order on appeal here. We acknowledge our use of some of the analysis of the summary judgment order by Judge Lauten in Orange County and Martha O. Haynie, Orange County Comptroller v. Expedia, Inc. and Orbitz, LLC (Fla. Cir. Ct., 9th Cir. Case No. 2006-CA-2104).

. Note that this provision clearly applies to hotels and motels, etc., and provides that they, too, are taxable under the Tourist Development Tax.

. The privilege involved here of renting rooms to tourists is also supported by the plain wording in other provisions in the statute. The statute explicitly provides that the privilege exercised is renting, leasing, or letting a room "for consideration,” and that the tax at issue is due "on the consideration paid for occupancy” of such a room in the applicable county. § 125.0104(3)(a)l., 2.a., Fla. Stat. In a contract, one party sells a product or service for consideration, and the other party pays for the product or service with that consideration. The statute itself recognizes this principle: "The tourist development tax shall be charged by the person receiving the consideration for the lease or rental, and it shall be collected from the ... customer at the time of payment of the consideration for such lease or rental.” § 125.0104(3)(f), Fla. Stat. (emphasis added). "The person receiving the consideration for such rental or lease shall receive, account for, and remit the tax” to the Department of Revenue. § 125.0104(3)(g), Fla. Stat. (emphasis added).