PERRY, J.
This case is before this Court for review of the decision of the First District Court of Appeal in Alachua County v. Expedia, Inc., 110 So.3d 941 (Fla. 1st DCA 2013). In its decision, the district court certified the following question of great public importance:
DOES THE “LOCAL OPTION TOURIST DEVELOPMENT ACT,” CODIFIED AT SECTION 125.0104, FLORIDA STATUTES, IMPOSE A TAX ON THE TOTAL AMOUNT OF CONSIDERATION RECEIVED BY AN ONLINE TRAVEL . COMPANY FROM TOURISTS WHO RESERVE ACCOMMODATIONS USING THE ON-LINE TRAVEL COMPANY’S WEBSITE, OR ONLY ON THE AMOUNT THE PROPERTY OWNER RECEIVES FOR THE RENTAL OF THE ACCOMMODATIONS?
Id. at 951-52. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
For the reasons that we explain below, we approve the First District’s decision by answering the certified question of great public importance to clarify that the tax at issue applies only to the funds received for the rental of transient accommodations.
BACKGROUND
The. present review concerns statutory interpretation of the Tourist Development Tax (hereinafter “TDT”). § 125.0104, Fla. Stat. (2014). In certifying the present question of great public importance, the First District asks this Court for guidance on whether the TDT applies to total monetary amounts online travel companies (hereinafter “OTCs”) charge their customers for securing reservations for transient accommodations in certain Florida coun *732 ties. We respond by answering the certified question in the negative.
The OTCs engage in business arrangements with Florida hotels, motels, and other providers of transient housing for rent (hereinafter “hotels”). The OTCs operate Internet sites on the worldwide web for purposes of allowing their customers to retrieve travel-related information pertaining to Hotels, airlines, and automobile rental companies.
Alachua County, other counties, and certain county tax collectors (hereinafter “Counties”) filed a joint declaratory action in the Second Judicial Circuit, in and for Leon County against the OTCs. The Counties argued that the TDT applied to the difference between the total monetary amounts the OTCs’ customers paid to them, and the lesser monetary amount the OTCs remit to the hotels. This difference is known as the markup charges. The Counties further argued that the customers, not the OTCs, are the persons who exercise the privilege that is taxable under the TDT.
The circuit court concluded that if the markup charges are subject to taxation, the Legislature must clearly inform the OTCs, by the statute, what is to be taxed. The circuit court further concluded that the statute must plainly state that OTCs are obligated to collect and remit said taxes to the Counties., However, the circuit court found that the TDT does not clearly impose any tax on the amount the OTCs charge their customers by way of the markup charges.
Although the Counties alternatively argued that the OTCs had effectively become the taxpayer who actually “rents, leases, or lets” the hotel rooms to the customers, the trial court noted that “neither the Legislature nor the Department of Revenue have yet acted to declare as much.” Therefore, the trial court granted the OTCs’ motion for summary judgment. The Counties appealed.
In affirming the trial court’s judgment, the First District determined that
[t]he crux of this dispute involves determining what is the privileged activity which the Tourist Development Tax taxes — renting a room to a tourist, or a tourist renting a room from a hotel? That is, did the Legislature declare that it is a privilege to rent a hotel room in Florida, or did it declare that it is a privilege to operate a hotel in this state?
Expedía, 110 So.3d at 944. The First District ultimately held that “the privilege being exercised for purposes of the [TDT] is renting rooms to tourists, not the other way around.” Id. at 945 (footnote omitted).
The Counties moved the district court for rehearing en banc, or in the alternative, for certification of a question of great public importance to this Court. The First District denied the Counties’ motion for rehearing en banc, but it granted their motion to certify a question of great public importance. Id. at 951-52. Thereafter, we granted the Counties’ subsequently filed petition for discretionary review, accepted briefs on the merits from the parties and amici curiae, and heard oral arguments.
ANALYSIS
Standard of Review
This Court’s consideration of the First District’s certified question concerns a pure question of law. Therefore, our review of the First District’s Expedia decision is de novo. See generally Aravena v. Miami-Dade Cnty., 928 So.2d 1163, 1166 (Fla.2006).
*733 Merits
We rephrase the certified question as follows:
Are the total monetary amounts that OTCs charge their customers to secure reservations for transient accommodation rentals in Florida counties subject to taxation under section |125.010⅜ Florida Statutes?
And, we answer the rephrased certified question in the negative.
In answering the rephrased certified question, we examined the TDT’s plain language and its antecedent statute, the Transient Rental Tax (hereinafter “TRT”). See § 212.03, Fla. Stat. (2014). In so doing, we’ have determined that the TDT contains no language, as the Counties assert,- that clearly directs that it should be applied to the markup charges and service fees associated with merchant model transactions for hotel room rentals.
Moreover, despite the operation of a given business model transaction, the monetary amount the hotels require for occupancy is the sole determinant for the charges that are taxable under the TDT. It is evident from the substance of the Counties’ alternative arguments that they misunderstand our decision in Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla.1981). Therefore, we clarify that Miami Dolphins primarily provides instruction that the TRT and TDT are statutes that should be read in pari materia to fully understand, the legislative intent and function of Florida’s transient rental taxation statutes.
The Transient Rental Taxation Statutes
Our precedent establishes that “[i]n construing statutes, [the] first consideration] [is] the plain meaning of the language used. [The statute’s plain] meaning controls unless it leads to a result that is either unreasonable or clearly contrary to legislative intent.” J.M. v. Gargett, 101 So.3d 352, 356 (Fla.2012) (quoting Tillman v. State, 934 So.2d 1263, 1269 (Fla.2006)). Furthermore, we have previously held that a proper conclusion about “legislative intent is determined primarily from the statute’s text.” Bennett v. St. Vincent’s Med. Ctr., Inc., 71 So.3d 828, 837 (Fla.2011) (quoting Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 198 (Fla.2007)). We, thus, look to the express language found in the statutes at issue to ascertain the Legislature’s intent regarding the extent of the taxing scope.
The TDT. provides, in pertinent part:
1. It is declared to be the intent of the Legislature that every person who rents, leases, or lets for consideration any living quarters or accommodations in any hotel, apartment hotel,- motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, condominium, or timeshare resort for a term of 6 months or less is exercising a privilege which is subject to taxation under this section, unless such person rents, leases, or lets for consideration any living quarters or accommodations which are exempt according to the provisions of chapter 212.
§ 125.0104(3)(a), Fla. Stat. (2014). In addition, the TRT provides, in pertinent part:
It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing, letting, or granting a license to use any living quarters or sleeping or housekeeping accommodations in, from, or a part of, or in connection with any hotel, apartment house, roominghouse, tourist or trailer camp, mobile home park, recreational vehicle park, condominium, or timeshare resort. However, any person who rents, leases, lets, or grants a license to others *734 to use, occupy, or enter upon any living quarters or sleeping or housekeeping accommodations in any apartment house, roominghouse, tourist camp, trailer camp, mobile home park, recreational vehicle park, condominium, or timeshare resort and who exclusively enters into a bona fide written agreement for continuous residence for longer than 6 months in duration at such property is not exercising a taxable privilege. For the exercise of such taxable privilege, a tax is hereby levied in an amount equal to 6 percent of and on the total rental charged for such living quarters or sleeping or housekeeping accommodations by the person charging or collecting the rental. Such tax shall apply to hotels, apartment houses, roominghous-es, tourist or trailer camps, mobile home parks, recreational vehicle parks, condominiums, or timeshare resorts, whether or not these facilities have dining rooms, cafes, or other places where meals or lunches are sold or served to guests.
§ 212.03(l)(a), Fla. Stat. (2014). In examining the disputed language within the TDT and TRT, we find no clear legislative intent to require taxation on the total monetary charges incurred by customers who obtain reservations for hotel room rentals through the OTCs’ Internet-based services.
It is undisputed that the TRT (enacted in 1949), and the TDT (enacted in 1977) were established to collect taxes on the transient rental of hotel rooms. For reasons that we will fully address in the following section, we interpret that “person who rents” under the TDT, and “every person is exercising a taxable privilege who engages in the business of renting” under the TRT, address the same subject matter; namely, the referenced person is the hotel. We reach this conclusion noting the statutory definition provided in Chapter 212, Florida Statutes: “‘[p]erson’ includes any individual, firm, copartnership, joint adventure, association, corporation, estate, trust, business trust, receiver, syndicate, or other group or combination acting as a unit and also includes any political subdivision, municipality, state agency, bureau, or department and includes the plural as well as the singular number.” § 212.02(12), Fla. Stat. (2014).
Thus, in light of the broad statutory definition of “person,” we find it is reasonable to read the disputed language in the TDT as “[a hotel that] rents,.... ” See Gargett, 101 So.3d at 356. Similarly, for the TRT, we read the disputed language as “every [hotel] is exercising a taxable privilege [that] engages in the business of renting, ....” Id.
Contrary to the Counties’ arguments, we. see nothing in the legislative history of these closely related statutes that demonstrates the Florida Legislature intended that the tax required by the TDT and TRT pertains to anything other than the monetary amount hotels charge for room rentals. Furthermore, the record before us supports our conclusion that, since its enactment of the respective statutes, the Legislature has chosen not to revise the statutes or otherwise specify that taxable “consideration” with respect to hotel room rentals includes the markup charges the OTCs include within the total charges to their customers for securing reservations. In other words, since the inception of the transient rental tax statutes, the taxable portion of such transactions has been based solely on the monetary amount a hotel actually sets and receives for the transient rental of hotel rooms in Florida.
Relevant Business Models for Transient Rental Transactions
Despite the plain language in the statutes at issue, the Counties argue that, *735 under so-called merchant model transactions, the full amount of charges the OTCs require of their customers for Florida hotel room reseiwations is subject to taxation under the TDT. We disagree.
The record before us shows that the amount the OTCs charge their customers for facilitating Florida hotel room reservations is fully negotiated between the OTC and hotel. Thus, under merchant model transactions, the markup portion of the total charges reflects the agreed-upon remuneration for the services an OTC provides by way of its Internet-based website. Conversely, under the agency model, travel companies facilitate hotel room reservations in a similar fashion as do the OTCs under merchant model transactions. However, after a hotel room is reserved, the customer makes all payments for the room rental directly to the hotel. In turn, the hotel remits to its travel company partners a negotiated monetary commission based on the hotel room rentals the travel companies facilitate. Both business models, therefore, achieve the same end — capturing the monetary costs hotels require for occupancy of transient lodging.
The Counties argue that the taxable amount under the TDT is contingent upon which business entity receives the payment associated with the confirmed hotel reservation. We reject this argument because it presumes that a person other than the hotel exercises the taxable privilege. Instead, we conclude that the statute concerns only the amount of funds a hotel requires for a customer to occupy the hotel room it rents on a transient basis. Thus, it is irrelevant to the taxation issue at hand which actors are involved and what roles they play in transactions for facilitating transient hotel room reservations. Under either transaction model, the tax required by the TDT will be based solely upon the transient rental rate of a room, that is, the price of possession established by the hotel for which it is in the business of selling.
Finally, as the OTCs and their supporting amici curiae point out, when in the past several sessions of the Legislature, the markup charges taxation issue has been raised as proposed legislation, the Legislature has repeatedly declined to revise the TRT or TDT to require such taxation. Accordingly, we hold that the Legislature’s presumptive awareness of the issue for which the Counties now seek redress reflects the Legislature’s willingness to maintain the status quo of not subjecting the OTCs’ markup charges to the transient rental taxes. See generally Dep’t of Revenue v. Bonard, Enter., Inc., 515 So.2d 358, 359 (Fla. 2d DCA 1987) (“The [Legislature is presumed to have been aware of the Department’s foregoing position. Not having thereafter amended the relevant legislation, the [Legislature may be considered to have thereby implicitly affirmed that position as reflecting the legislative intent.” (citing White v. Johnson, 59 So.2d 532 (Fla.1952))).
In the next section, we explain that the Counties have misread Miami Dolphins insofar as they rely on it as a basis for concluding that the markup portion of the OTCs’ charges is subject to the TDT.
Our Prior Decision
The Counties rely on. our previous statement that the TDT tax is “imposed on all renters of the covered types of premises” to suggest that we previously held that hotel guests are exercising the taxable privilege subject to the TDT. See Miami Dolphins, 394 So.2d at 989. Contrary to the Counties’ assertion, in Miami Dolphins we did not hold that the customers of transient hotel rooms are the persons exercising the privilege that is taxable by the TDT. In fact, as the First District correctly discussed, our Miami Dolphins decision does not address whether the oc *736 cupants of rented hotel rooms are exercising a taxable privilege. Expedia, 110 So.3d at 945 (“The [supreme court] did not hold, nor was it asked to address, whether the taxable privilege addressed in the [TDT] is exercised by those renting rooms from hotels or by those renting rooms to tourists.”).
Nevertheless, the Counties assert that because the TDT and TRT conflict as to what is the taxable privilege, theré is no need for the statutes to be read in pari materia. In arriving at such a conclusion, the Counties rely oh an isolated portion of the' instruction provided in Miami Dolphins, that states: “the [TDT] may modify and conflict with the [TRT] as needed.” Miami Dolphins, 394 So.2d at 988. However, the explanation, in Miami Dolphins that the TDT should have the ability to conflict with the TRT should be contextually understood. Rather than finding irreconcilable conflict between the TDT and TRT, in Miami Dolphins wé provided clear guidance for why the statutes should be read in pari materia.
We are inclined ■... to adopt the reasoning of the circuit court_
The circuit court found that the [TDT] is to be. read in pari materia with chapter 212, Florida Statutes, the state transient rentals tax, and that when such is done, the former is “complete and whole in every way with all legal policies of significance set and enacted by the legis-lature_’-’
When read in pari mdteria with chapter 212, Florida'Statutes, the [TDTJ'con-tains all of the elements and establishes the policy necessary to implement the [Legislature’s goals. Any omissions therein are to be filled by'the applicable provisions of the transient rentals tax. In the event of conflict between any provisions of the two, the provisions of the act will govern. While its provisions are used to fill any gaps in the act, the transient reñíais 'tax is simply the base ■on which the [TDT] rests; the [TDT] may modify and conflict with the transient rentals fax statute as needed.
[[Image here]]
Clearly, the [TDT] in the case sub judice need not be stricken as an unconstitutional delegation of legislative powers. If read in conjunction with chapter 212, it passes muster for completeness, certainty and reviewability.
Mat 987-88.
In light of our previous statements, we reiterate in this case that the TRT and TDT should be read in. pari materia to fully understand the purpose and function of these transient rental taxation statutes. Namely, the TRT and TDT have been enacted to capture tax revenue from the charges Florida hotels require for transient rentals of lodging accommodations. In Miami Dolphins, our acknowledgement that the statutes at issue can “conflict” reflects an understanding that the TDT was enacted for the specific purpose of providing tax revenue to Florida counties for the funding of statutorily specified initiatives that promote tourism or otherwise foster the. ■ tourism industry. . See § 125.0104(5), Fla. Stat. (2014).
Because the TRT, which was enacted nearly thirty years earlier, does not have such restraints on the uses of tax revenue as does the TDT, in Miami Dolphins we acknowledged that the two statutes will invariably conflict “as needed” so that the TDT may be able to fulfill the Legislature’s intent that revenue streams from that statute have only specific authorized uses. See § 125.0104(5), Fla. Stat. (2014). In contrast, the tax revenue from the TRT becomes part of the State’s general fund, which may be uáed for any lawful purpose the Legislature decides.
*737 CONCLUSION
We are bound by the constraints of existing jurisprudence to interpret Florida’s TDT in accordance with the legislative intent found in the statute’s plain language. See Gargett, 101 So.3d at 356; Bennett, 71 So.3d at 837. Thus, we conclude today that the language found in both of Florida’s transient rental statutes is not ambiguous, and it does not provide a basis for interpreting that the TDT provides authority for the Counties to promulgate ordinances that subject the' total monetary amounts OTCs charge their customers to the tax. Only the transient rental rate, which is set by the hotel and collected by the OTC in accordance with its contract with the hotel, is subject to taxation pursuant to the TDT. Accordingly, we[1] answer the rephrased certified question in the .negative and, therefore, approve the First District’s Expedía decision.
Additionally, we commend counsel for the parties, as well as the amici curiae, for the high quality of the arguments presented in this closely contested case. The principled advocacy by the members of the Bar provided this Court with welcomed and valued assistance in our continuous efforts to resolve important questions of law.
It is so ordered.
LABARGA, C.J., and QUINCE, J., concur.
PARIENTE, J., concurs in result with an opinion.
CANADY, J., concurs in result.
LEWIS, J., dissents with an opinion, in which POLSTON, J., concurs.

. Additionally, prior to the First District Court of Appeal’s 2013 opinion we review here, no appellate court had ruled on the merits of this issue. In Orange County v. Expedia, Inc., 985 So.2d 622, 630 (Fla. 5th DCA 2008), the Fifth District Court of Appeal declined to address this issue, when it reversed the trial court’s dismissal of Orange County’s complaint seeking a declaratory judgment that the TDT is due on the markup and remanded to the trial court to consider the County’s declaratory judgment action. On remand, the trial court denied the County’s motion for summary judgment, holding that the tax did not apply to the markup received by the OTCs, construing the statute against the taxing authority and in the light most favorable to the taxpayer. Orange Cnty. v. Expedia, Inc., No. 48-2006-CA-2104-0, 2011 WL 7657975 (Fla.Cir.Ct. Jan. 20, 2011). The issue had also been raised in federal trial courts with inconclusive results. See, e.g., Cnty. of Monroe v. Priceline.com, Inc., 265 F.R.D. 659 (S.D.Fla. Mar.15, 2010) (granting class certification as to the issue of whether the TDT applies to the markup charged by the OTCs); Brevard Cnty. v. Priceline.com, Inc., No. 6:09-cv-1 695-Orl-31KRS, 2010 WL 680771 (M.D.Fla. Feb. 24, 2010) (denying the OTC’s motion to dismiss with respect to whether the TDT applies to the markup); Leon Cnty. v. Hotels.com, L.P., No. 06-21878-CIV-HUCK/SIMONTON, 2006 WL 3519102 (S.D.Fla. Dec. 6, 2006) (denying the OTC’s motion to dismiss as to whether the TDT applies to the markup).