DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANNE GANNON,** in her capacity as Palm Beach County Tax Collector, on behalf of Palm Beach County,
Appellant,

v.

**AIRBNB, INC., AIRBNB PAYMENTS, INC., HOMEAWAY.COM, INC., HOMEAWAY, INC.,** and **TRIPADVISOR, LLC,**
Appellees.

No. 4D19-541

[March 25, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; James Nutt, Judge; L.T. Case No. 502014CA000428XXXXMBAO.

Philip M. Burlington and Adam Richardson of Burlington & Rockenbach, P.A., West Palm Beach, and Louis M. Silber of Silber & Davis, West Palm Beach, and Jeffrey M. Liggio and Olivia D. Liggio of Liggio Law, P.A., West Palm Beach, for appellant.

Nicole K. Atkinson, Kenneth Bell, and Amy S.L. Terwilleger of Gunster, Yoakley & Stewart, P.A., West Palm Beach, and Craig S. Primis and Devin Anderson of Kirkland & Ellis, LLP, Washington, D.C., and Jeffrey A. Rossman of Freeborn & Peters LLP, Chicago, Illinois, for appellees.

DAMOORGIAN, J.

Anne Gannon, in her capacity as Palm Beach County Tax Collector ("Tax Collector"), appeals summary judgment entered in favor of Appellees, Airbnb, Inc., Airbnb Payments, Inc., Homeaway.com, Inc., HomeAway, Inc., and TripAdvisor, LLC (collectively "Companies"). The final judgment determined that the Companies were not required to collect and remit the Tourist Development Tax ("TDT") to the Tax Collector as dealers. For the reasons discussed below, we affirm.

The Companies[1] each manage an online platform that permits property owners or their agents ("Owners") to list and advertise their properties for short-term accommodations. Persons seeking accommodations ("Guests") can search the available listings and reserve a property that suits their needs. The Companies provide a number of services to both the Owners and Guests including advertising and listing properties, message systems, and payment systems. Despite the Companies' role in the transactions, it is undisputed that none of the Companies have any possessory rights in any of the properties listed nor are they a party to any of the agreements between the Owners and Guests. Each Company clearly states this in its Terms and Conditions.

The Companies' Terms and Conditions also provide that the Owners appoint the Companies as their "Limited Payment Collection Agent" for the sole purpose of collecting funds from the Guests and remitting it to the Owners. Airbnb's Terms and Conditions state, in relevant part, that "[e]ach [Owner] collecting payment for services provided via the Airbnb Platform . . . hereby appoints Airbnb Payments as the [Owner's] payment collection agent solely for the limited purpose of accepting funds from [Guests] purchasing such services. . . . Airbnb Payments is responsible for remitting the funds to the [Owners] in the manner described in these Payment Terms." TripAdvisor's Terms and Conditions contain a similar provision, stating that "[O]wners hereby appoint [TripAdvisor] as your limited payment collection agent solely for the purpose of accepting funds from [Guests] on Your behalf. . . . [TripAdvisor is] responsible for arranging remittance of Your payment in the manner described in these Owner Terms of Use."[2]

The Tax Collector filed a complaint for declaratory relief against the Companies, seeking a declaratory judgment that the Companies were required to register as dealers and collect and remit the TDT pursuant to sections 125.0104 and 212.0305, Florida Statutes. The question for the trial court was who, under the current statutory scheme, was required to collect and pay the TDT to the Tax Collector—the Companies or the Owners? Concluding that the Owners were responsible to collect and pay the tax because "dealers are limited to those engaged in the business of

---

[1] Homeaway, Inc. and Airbnb Payments, Inc., do not operate platforms. Both sides agree that Homeaway, Inc. was the former parent company of Homeaway.com, Inc. but no longer exists due to a merger. Airbnb Payments, Inc. is the payment processing company of Airbnb, Inc.

[2] Homeaway, Inc. does not process payments received from Guests in the way Airbnb, Inc. and TripAdvisor do. Rather, they use a third-party payment processing company called YapStone.

renting, not the business of servicing those in the business of renting," the trial court entered summary judgment in favor of the Companies. This appeal follows.

The standard of review for an order granting or denying a motion for summary judgment is de novo. *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Further, "[o]n appeal, this court reviews a trial court's application of a statute *de novo*." *Chackal v. Staples*, 991 So. 2d 949, 953 (Fla. 4th DCA 2008).

On appeal, the Tax Collector presents two arguments why the Companies are required to collect and remit the TDT: (1) the Companies, through their respective platform services, exercise a taxable privilege by engaging in the business of renting, leasing, or letting short-term accommodations; and (2) even if the Companies are not exercising a taxable privilege, they are still required to register as dealers because they receive payment on the Owners' behalf. We disagree.

Section 125.0104, Florida Statutes, allows participating counties to levy and impose a tourist development tax, commonly known as a "bed tax," on the transient rental of rooms within its boundaries. The TDT statute provides "that every person who rents, leases, or lets for consideration any living quarters or accommodations . . . for a term of 6 months or less is exercising a privilege which is subject to taxation under this section, unless such person rents, leases, or lets for consideration any living quarters or accommodations which are exempt according to the provisions of chapter 212." § 125.0104(3)(a)(1), Fla. Stat. (2014). The TDT statute further provides that the tax "shall be charged by the person receiving the consideration for the lease or rental . . . ." § 125.0104(3)(f), Fla. Stat. (2014).

The citation to chapter 212 in the TDT statute is in reference to the statewide Transient Rentals Tax ("TRT") codified in section 212.03 of the Florida statutes. Although the TRT statute is not at issue in the instant case, the TDT statute incorporates provisions from the TRT and the two statutes must therefore be read in *pari materia* to fully understand the legislative intent and function of Florida's transient rental taxation statutes. *See Alachua Cty. v. Expedia, Inc.* (*Alachua II*), 175 So. 3d 730, 736 (Fla. 2015) (plurality opinion). The TRT statute, in turn, provides in pertinent part, that "every person is exercising a taxable privilege who engages in the business of renting, leasing, letting, or granting a license to use any living quarters or sleeping or housekeeping accommodations in, from, or a part of, or in connection with any hotel, apartment house, roominghouse . . . ." § 212.03(1)(a), Fla. Stat. (2014).

3

With the applicable provisions of these statutes in mind, we address the first issue of whether the Companies in the instant case are exercising a taxable privilege so as to be subject to taxation under the TDT statute. Our decision on this issue is guided by the holdings in *Alachua II*, 175 So. 3d at 737, and *Alachua County v. Expedia, Inc.* (*Alachua I*), 110 So. 3d 941, 946–47 (Fla. 1st DCA 2013). The *Alachua* cases involved online travel companies, such as Expedia.com, which operated websites that allowed customers to compare rates at various hotels, motels, and other providers of transient housing (collectively "hotels"). *Alachua II*, 175 So. 3d at 732. Much like the online platforms in the instant case, customers could then make reservations and submit payment directly on the online travel company's website. *Alachua I*, 110 So. 3d at 942. The online travel company would then charge the customers a fee for facilitating the reservation transaction between the customer and hotel. *Id.* The issue in the *Alachua* cases was whether the TDT applied to the entire amount charged to the customer, including the service fee retained by the online travel companies, or only the amount received by the hotels. *Alachua II*, 175 So. 3d at 731; *Alachua I*, 110 So. 3d at 942.

In concluding that the TDT only applied to the amounts received by the hotels, the First District held that the online travel companies were not exercising a taxable privilege as contemplated under the TDT statute and, thus, the amounts retained by the companies were not subject to taxation. *Alachua I*, 110 So. 3d at 946–97. The court, after analyzing both the TDT and TRT statutes, explained:

> To "rent, lease or let" in ordinary meaning denotes the granting of possessory or use rights in property. Inherent in that idea is the notion that one actually has sufficient control of the property to be entitled to grant possessory or use rights. Thus, the consideration received for the "lease or rental" is that amount received by the hotels for the use of their room, and not the mark-up profit retained by the [online travel companies] for facilitating the room reservation.
> . . . .
> The [online travel companies] are simply conduits through which consumers can compare hotels and rates and book a reservation at the chosen hotel. They do not grant possessory or use rights in hotel properties owned or operated by third-party hoteliers, as contemplated by the Tourist Development Tax enabling statute or the counties' ordinances. In this role, the [online travel companies] collect the monies owed for the room, including taxes and fees, and pass on to the hotels the money for the room rental and the taxes on the price of the

4

room. The consideration the [online travel companies] ultimately keep is not for the rental or lease, but for their service in facilitating the reservation.

*Id.* at 946.

In the present case, similar to the online travel companies in *Alachua*, the Companies do not own, possess, or have a leasehold interest to convey in any of the properties listed on their online platforms. Rather, the Companies are simply conduits through which customers can compare properties and rates and book a reservation at the chosen property. Applying the Supreme Court's analysis in *Alachua II* to the present case compels us to conclude that the Companies are not in the business of renting, leasing, or letting transient accommodations as contemplated under the TDT or TRT statutes and, consequently, are not subject to taxation under those statutes.

The Tax Collector maintains that the *Alachua* cases have no bearing on the instant case because the issue at hand in those cases was strictly whether the *amounts* retained by the online travel companies were subject to taxation, not whether the online travel companies were engaged in a taxable privilege. *See Alachua II*, 175 So. 3d at 735 ("[I]t is irrelevant to the taxation issue at hand which actors are involved and what roles they play in transactions for facilitating transient hotel room reservations."). We disagree. Although the only issue expressly addressed in those cases was whether the TDT applied to the fees retained by the online travel companies, by answering that question in the negative, the reviewing courts necessarily had to first determine whether the online travel companies were exercising the taxable privilege of renting, leasing, or letting transient accommodations. It is only because the act of facilitating room reservations did not qualify as exercising the taxable privilege that the TDT did not apply to the amounts retained by the companies.

We next address the Tax Collector's alternative argument that, even if the Companies are not engaged in the business of renting properties, they nonetheless are required to register as dealers and collect and remit the TDT to the taxing authority because they receive payments on the Owners' behalf. In support thereof, the Tax Collector primarily relies on Palm Beach County Ordinance 17-114(b) which provides in relevant part:

> *The person receiving the lease or rental consideration* (also referred to herein as the "dealer") . . . shall receive, account for, and remit the tax to the tax collector (hereinafter the "tax

5

collector"), who shall be responsible for the collection of the tax from the dealer and the administration of the tax.

Palm Beach County., Fla., Code ch.17, art. III, § 17-114(b) (2013) (emphasis added).

The ordinance, in turn, originates from the TDT statute, which provides that:

> The [TDT] shall be charged by the person receiving the consideration for such lease or rental . . . . The person receiving the consideration for such rental or lease shall receive, account for, and remit the tax to the Department of Revenue . . . . The same duties and privileges imposed by chapter 212 upon dealers . . . shall apply to and be binding upon all persons who are subject to the provisions of this section.

§ 125.0104(3)(f)–(g), Fla. Stat. (2014). The TRT statute, which must be read in *pari materia* with the TDT statute, likewise provides "[t]he tax provided for herein . . . shall be charged by the lessor or person receiving the rent . . . . The same duties imposed by this chapter upon dealers . . . shall apply to and be binding upon all persons . . . ." § 212.03(2), Fla. Stat. (2014).

Based on the above provisions, the Tax Collector argues that because the Companies receive the consideration on the Owners' behalf, they are "dealers" and are required to collect and remit the TDT to the taxing authority. We disagree. Chapter 212, which houses the TRT statute, defines a dealer as "any person who *leases, or grants a license to use, occupy, or enter upon,* living quarters, sleeping or housekeeping accommodations in hotels, apartment houses, roominghouses, . . . [or] real property . . . ." § 212.06(2)(j), Fla. Stat. (2014) (emphasis added). In other words, a dealer is one who can grant a possessory interest in the property. Based on our previous determination that the Companies are simply conduits and do not have any possessory interests in the properties, the Companies are not "dealers" as contemplated under the ordinance and the TDT and TRT statutes. Rather, a "dealer" is the owner of the property, or the owner's agent, who ultimately receives the consideration.

Citing to the provisions in the Companies' terms of service regarding the Owners appointing the Companies as their limited collection agents, the Tax Collector argues that the Companies are the owners' agents and must therefore register as dealers and collect and remit the TDT to the

6

taxing authority. In support of its argument, the Tax Collector relies on Florida Administrative Code Rule 12A-1.061(9)(a). The Rule, which implements the TRT, states:

> Except as provided in subsection (2), every person that rents, leases, lets, or grants a license to others to use any transient accommodation is required to register with the Department. *Agents, representatives, or management companies that collect and receive rent as the owner's representative are required to register as a dealer and collect and remit the applicable tax due on such rentals to the proper taxing authority.*

Fla. Admin. Code. R. 12A-1.061(9)(a) (emphasis added).

Although the Companies' agreement with their Owners use the term "agents" for the purpose of collecting funds, simply using the word "agent" does not create an agency relationship if one does not exist. *See Parker v. Domino's Pizza, Inc.*, 629 So. 2d 1026, 1027 (Fla. 4th DCA 1993) ("It is clear that the nature and extent of the relationship of parties said to occupy the status of principal and agent presents a question of fact, and is not controlled by descriptive labels employed by the parties themselves.") (internal citations omitted). To the extent that an agency relationship was created, the Terms and Conditions expressly created a limited agency for the sole purpose of collecting funds from the Guests before transferring the consideration to the Owners. The relationship did not bestow on the Companies the power to act as the Owners' agent for purposes of exercising the taxable privilege of renting. *See Stalley v. Transitional Hosps. Corp. of Tampa, Inc.*, 44 So. 3d. 627, 630 (Fla. 2d DCA 2010) ("[T]he scope of the agent's authority is limited to what the principal has authorized the agent to do.").

The dissent argues that a plain reading of the TDT and TRT statutes, ordinance, and rule compels us to find that someone other than one who can grant a possessory interest may "receive" the consideration and, thus, be required to collect and remit the TDT. We disagree. Such an interpretation would implicate a number of intermediaries who "receive" the consideration before the Owners, including credit card companies, banks, etc. and require them to collect and remit the TDT. We are guided by the words of Justice Scalia in *Green v. Bock Laundry Machine Company* and find that "[w]e are confronted here with a statute which, if interpreted literally, produces an absurd . . . result." 490 U.S. 504, 527 (1981) (Scalia, J., concurring); *see also Vrchota Corp. v. Kelly*, 42 So. 3d 319, 322 (Fla. 4th DCA 2010) ("The legislature is not presumed to enact statutes that provide for absurd results. If some of the words of the statute, when

viewed as one part of the whole statute or statutory scheme, would lead to an unreasonable conclusion . . . then the words need not be given a literal interpretation.").

For the foregoing reasons, we affirm.

*Affirmed.*

LEVINE, C.J., concurs.
GROSS, J., dissents in part and concurs in part, with opinion.

GROSS, J., dissenting in part and concurring in part.

I dissent in part because the texts of the applicable statutes, rule, and ordinance impose upon appellees the obligation to collect the Tourist Development Tax from their clients and remit it to the County.

Central to this dissent is the Supreme Court's recent decision—*Advisory Opinion to Governor Re: Implementation of Amendment 4, The Voting Restoration Amendment,* 45 Fla. L. Weekly S10 (Fla. Jan. 16, 2020). There, in no uncertain terms, the Court announced the analytical framework that applies to constitutional and statutory construction.

In *Advisory Opinion,* for both constitutional and statutory interpretation, the Supreme Court declared that a court 'must examine the actual language used in the'" text of the provision at issue. *Id.* at 513 (quoting *Graham v. Haridopolos,* 108 So. 2d 597, 603 (Fla. 2013)). "If that language is clear, unambiguous, and addresses the matter at issue" then a court's "task is at an end." *Id.*

The Court rejected an interpretive approach that focuses on the subjective intent of the drafters of a constitutional or statutory provision, because that approach

> may be understood to shift the focus of interpretation from the text and its context to extraneous considerations. And such extraneous considerations can result in the judicial imposition of meaning that the text cannot bear, either through expansion or contraction of the meaning carried by the text. We therefore adhere to the "supremacy-of-text principle": "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012).

*Id.*

### The Applicable Statutes, Ordinances, and Regulations

Section 125.0104 authorizes a county to collect a Tourist Development Tax ("TDT"). Section 125.0104 provides who shall collect the tax and what they shall do with it once collected:

> (3)(f) The tourist development tax **shall be charged by the person receiving the consideration** for the lease or rental, and it shall be collected from the lessee, tenant, or customer at the time of payment of the consideration for such lease or rental.
>
> (3)(g) The **person receiving the consideration** for such rental or lease shall receive, account for, and remit the tax to the Department of Revenue at the time and in the manner provided for persons who collect and remit taxes under s. 212.03. **The same duties and privileges imposed by chapter 212 upon dealers in tangible property**, respecting the collection and remission of tax; the making of returns; the keeping of books, records, and accounts; and compliance with the rules of the Department of Revenue in the administration of that chapter **shall apply to and be binding upon all persons who are subject to the provisions of this section**. However, the Department of Revenue may authorize a quarterly return and payment when the tax remitted by the dealer for the preceding quarter did not exceed $25.

(Emphasis supplied). These statutory sections specify that the "person receiving the consideration" for a lease or rental is responsible for collecting the TDT and remitting it to the Department of Revenue.

Consistent with these provisions of section 125.0104, Palm Beach County Ordinance 17-114(b) provides:

> *Collection and administration of tax.* The **person receiving the lease or rental consideration** (also referred to herein as the "dealer") for any period subsequent to December 31, 1992, **shall receive, account for, and remit the tax** to the Tax Collector (hereinafter the "Tax Collector"), who shall be responsible for the collection of the tax from the dealer and the administration of the tax.

(Emphasis supplied).

9

Both the statute and the ordinance are in line with Chapter 212, Florida Statutes (2019), which applies "to the administration of any tax levied pursuant" to section 125.0104(2)(a) Fla. Stat. (2019). Section 212.03(2) states that the "person receiving the rent," a status distinct from an owner or lessor who is the ultimate beneficiary of the rental, is required to charge and remit the TDT:

> The tax provided for herein shall be in addition to the total amount of the rental, shall be charged by the lessor **or person receiving the rent** in and by said rental arrangement to the lessee or person paying the rental, and shall be due and payable at the time of the receipt of such rental payment by the lessor **or person**, as defined in this chapter, **who receives said rental or payment**. The owner, lessor, **or person receiving the rent** shall remit the tax to the department at the times and in the manner hereinafter provided for dealers to remit taxes under this chapter. **The same duties imposed by this chapter upon dealers in tangible personal property** respecting the collection and remission of the tax; the making of returns; the keeping of books, records, and accounts; and the compliance with the rules and regulations of the department in the administration of this chapter **shall apply to and be binding upon** all persons who manage or operate hotels, apartment houses, roominghouses, tourist and trailer camps, and the rental of condominium units, **and to all persons who collect or receive such rents on behalf of such owner or lessor taxable under this chapter**.

(Emphasis supplied).

For our purposes, the two key words in these enactments are "consideration" and "receiving."

The common definition of "receive" is "to take into one's possession"[3] or "to come into possession of."[4]

As for "consideration," the ordinances and statutes use the term in connection with the rental payment for the short-term lease. In this sense,

---

[3] *Random House Dictionary of the English Language, The Unabridged Edition* (1967), p. 1198.

[4] Merriam-Webster.com,https://www.merriam-webster.com/dictionary/receive, Definition 1.

"consideration" is defined as "RECOMPENSE, PAYMENT,"[5] or "[a] payment or reward."[6]

A plain reading of the statutes and the ordinance establishes that (1) a person other than the owner or lessor may "receive" a rental payment; (2) a person may receive a rental payment "on behalf of" an owner or lessor of a rental property and (3) the person who so receives the rent is required to charge and remit the TDT.

Finally, Florida Administrative Code Rule 12A-1.061(9)(a) requires that entities receiving rent on behalf of owners are required to register as dealers and collect and remit the applicable tax:

> Except as provided in subsection (2), every person that rents, leases, lets, or grants a license to others to use any transient accommodation is required to register with the Department. **Agents, representatives, or management companies that collect and receive rent as the owner's representative are required to register as a dealer and collect and remit the applicable tax due on such rentals to the proper taxing authority.** If the agent, representative, or management company has no role in collecting or receiving the rental charges or room rates, the person receiving such rent is required to register as a dealer and collect and remit the applicable tax due on such rentals to the proper taxing authority.

(Emphasis supplied).

The impact of these statutes, ordinances, and rule is crystal clear. The law focuses on that "magic moment"[7] when a person comes into

---

[5]   Merriam-Webster.com,https://www.merriam-webster.com/dictionary/consideration, Definition 6(a).

[6]   OxfordDictionaries.com, https://en.oxforddictionaries.com/definition/consideration, Definition 2.

[7]   In *God Bless You, Mr. Rosewater* (1965), Kurt Vonnegut describes that "magic moment" in a legal transaction when a lawyer extracts his fee:

> In every big transaction . . .there is a magic moment during which a man has surrendered a treasure, and during which the man who is due to receive it has not yet done so.  An alert lawyer will make that moment his own, possessing the treasure for a magic microsecond, taking a little of it, passing it on.

possession of a rental payment, which triggers the obligation of that person to collect the TDT and remit it to the proper taxing authority.

Both Airbnb and TripAdvisor qualify as agents who "receive rent as the owner's representative" within the meaning of Rule 12A-1.061(9)(a). The companies' terms of service provide that they will act as payment collection agents to receive funds from customers.

Airbnb's terms of service require property owners to use its payment processing services. Paragraph 9.1 of Airbnb Payments-Terms of Service states:

> Each Member collecting payment for services provided via the Airbnb Platform . . . hereby appoints Airbnb Payments as the Providing Member's payment collection agent solely for the limited purpose of accepting funds from Members purchasing such services.

Another provision in those terms of service describes the legal relationship and authorizes Airbnb to fulfill the responsibilities imposed by Florida law:

> In any jurisdiction where Airbnb facilitates Collection and Remittance pursuant to the Airbnb Terms . . . , you hereby instruct and authorize Airbnb Payments to collect Occupancy Taxes from Guests on the Host's behalf at the time the Listing Fees are collected, and to remit such Occupancy Taxes to the Tax Authority.

TripAdvisor's Terms of Use has similar provisions:

> We will provide Owners with an online payment platform . . . giving them the ability to accept online payments from Travelers. You hereby appoint Us as your limited payment collection agent solely for the purpose of accepting funds from Travelers on your behalf.

To avoid the plain language of the statutes, ordinance, and rule, appellees engage in the type of interpretive mischief that a textual approach seeks to avoid. They argue that *Alachua County v. Expedia, Inc.*, 175 So. 3d 730 (Fla. 2015), compels a different result, but that case did not consider the issue that is the focus of this dissent. Appellees rewrite the applicable statutes to conform to their argument. "Under fundamental principles of separation of powers, courts cannot judicially alter the

wording of statutes where the Legislature clearly has not done so." *Fla. Dep't of Revenue v. Fla. Mun. Power Agency*, 789 So. 2d 320, 324 (Fla. 2001). Appellees contend that the legislation here should be narrowly applied, a stratagem that allows a court to tinker with the plain language of a statute to achieve a desired result, a refocusing that is properly left to the legislative body.

Avoiding the obvious application of the statutes and ordinances, the majority resorts to a classic piece of interpretive legerdemain. The majority has come up with absurd applications of the statute as a rationale for not applying the legislation to situations at which the enactments were obviously directed. Yes, funds from appellees' rentals may come to reside for a time with banks and credit card companies, but banks and credit card companies are not parties to the underlying rental transactions; rather they facilitate those transactions. Even quoting Justice Scalia as a kind of magic incantation cannot legitimize this novel approach to statutory interpretation.

I concur with the result in that portion of the majority opinion holding that appellees themselves are not subject to taxation under the TDT statute. The basis of my concurrence is that section 125.0104(3)(a)(1) applies to "every person who rents, leases, or lets for consideration any living quarters or accommodations." This language cannot properly be expanded to apply to every person "who engages in the business of renting, leasing, letting, or granting a license to use any living quarters or sleeping or housekeeping accommodations," which is the language of section 212.03(1)(a), Florida Statutes (2019). For this reason, I agree with the majority that appellees were not exercising a taxable privilege so as to be subject to taxation under the TDT statute.

*         *         *

***Not final until disposition of timely filed motion for rehearing.***